

**FILED**

Jun 10 2015, 8:47 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Patricia Caress McMath
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Jamar Minor,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 10, 2015

Court of Appeals Case No.
49A02-1409-CR-628

Appeal from the Marion Superior
Court

The Honorable Kurt Eisgruber, Judge

Case No. 49G01-1306-MR-41201

**Crone, Judge.**

# Case Summary

[1] Jamar Minor appeals his convictions for murder and class A felony attempted murder, following a jury trial.[1]  On appeal he asserts that the trial court abused its discretion in excluding certain hearsay evidence.  Because the evidence does not conform to any exception to the hearsay rule, we find no abuse of discretion.  Minor also contends that the trial court erred in instructing the jury regarding accomplice liability such that he may have been convicted of attempted murder absent the specific intent to kill.  Although we find that the jury was indeed erroneously instructed, we conclude that the error did not impact the jury's verdict and was therefore harmless.  Finally, Minor argues that the trial court abused its discretion in refusing his tendered jury instruction on criminal recklessness as an inherently lesser included offense of attempted murder.  Indiana case law is clear that criminal recklessness is not an inherently lesser included offense of attempted murder, and thus the trial court did not abuse its discretion in refusing the instruction.  We affirm Minor's convictions.

# Facts and Procedural History

[2] The facts most favorable to the verdicts indicate that in the afternoon on June 11, 2013, nineteen-year-old Bryisha Dickerson, twenty-two-year-old Taria Tate, Tia Tate, and Minor's half-sister, Kabrea Slatter, were all hanging out together in Indianapolis.  The Tate sisters received a call from their ten-year-old cousin,

---

[1] Minor was also convicted of class A misdemeanor carrying a handgun without a license.  He does not appeal that conviction.

"Bam," who told them that another boy in the neighborhood, eleven-year-old "Punney" Williams, had stolen his iPod. Tr. at 432. The group of females walked to Punney's grandmother's house on Guilford Avenue to see if they could help retrieve the iPod. Punney's older brother, Leo Williams, his cousin Damien Williams, another cousin, Dazion Dulin, and another relative, Tron Harris, were all present at the house. The groups began to argue. The argument escalated into a physical altercation between the male and female members of each group, and eventually thirty-five to forty people gathered in the street. Damien was not involved and instead tried to break up the fight. Police came and the crowd dispersed. No arrests were made.

[3] The group of girls went to the Tate sisters' grandmother's house on 24th Street. A blue SUV driven by Jordan Gray pulled up across the street. Minor was in the passenger seat. Minor's half-sister, Slatter, had called Minor to come pick her up and informed him that she had been involved in a fight with some males. Minor and Gray parked the SUV in front of a white van and sat in the SUV between five and twenty minutes before driving off. The two men returned about five minutes later, parked in the same spot, and got out of the SUV to speak to the females. Minor and Gray then returned into the SUV but did not leave.

[4] Approximately ten minutes later, Damien, Leo, Dulin, Harris, and a friend named Eric Taylor came walking up a nearby alley toward 24th Street. They had heard that someone might be planning to come "shoot up" the Williamses' grandmother's house, so they wanted to talk to the girls to "make sure

everything's squashed cause [they] all grew up together." *Id*. at 115, 237. Since the fight was about "nothin important," they just wanted to make sure that "everything was cool." *Id*. at 511. Taylor noticed the blue SUV parked in the street but he could not see the individuals inside because they were "ducked down or something." *Id*. at 223. Damien and his companions spoke to the females, and the females assured them that everything was fine.

[5] As the five young men were leaving, they walked past the blue SUV. A voice that appeared to be coming from inside the SUV said something to the group. One of the females at the scene, Dickerson, immediately ran from the street onto the porch of a house because she felt a "bad vibe" and knew that something was about to happen. *Id*. at 117. The group of young men stopped walking and turned around so they were facing the SUV. Minor and Gray, both armed with weapons, jumped out of the SUV and started shooting at the group. Damien was hit immediately with multiple shots and fell into the street. The other young men ran from the gunfire. Taylor was hit in the leg as he was running away. Taylor fell, and Minor and Gray continued to fire at him. Taylor crawled toward the house of an acquaintance who eventually pulled him inside and called for an ambulance. Minor and Gray fled in the SUV.

[6] Damien died as a result of two fatal gunshot wounds, one to his abdomen and one to his upper back. The two bullets recovered from his body were each fired by a different weapon. Taylor was hospitalized for three days. His leg was badly injured, and doctors placed a metal rod in his leg from his kneecap to his ankle. Investigators recovered sixteen spent shell casings at the crime scene

fired from two different nine-millimeter weapons. Police also found a .40 caliber automatic pistol under the white van that was parked in the street. There was no physical evidence to indicate that the pistol had been fired.

[7] The State charged Minor and Gray with murder, class A felony attempted murder, and class A misdemeanor carrying a handgun without a license. Minor and Gray were also each charged with a firearm sentence enhancement pursuant to Indiana Code Section 35-50-2-11.[2] Minor and Gray were tried together as codefendants in a three-day jury trial. Minor testified at trial and claimed that Damien pointed a gun at him and that he shot at Damien and Taylor in self-defense. No other witnesses testified that they saw a gun on Damien. The jury found both Minor and Gray guilty of murder, attempted murder, and carrying a handgun without a license. Minor waived his right to a jury trial on the firearm sentence enhancement. Following a hearing, the trial court found Minor guilty of use of a firearm during the commission of the murder. The court sentenced Minor to an aggregate term of seventy years' imprisonment. Minor now appeals his convictions for murder and attempted murder. We will provide additional facts in our discussion as necessary.

---

[2] This section provides in relevant part that the court may sentence a defendant to an additional fixed term of imprisonment between five and twenty years if the State has proven beyond a reasonable doubt that the defendant knowingly or intentionally used a firearm in the commission of certain felony offenses.

# Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in excluding certain hearsay evidence.

Minor first asserts that the trial court abused its discretion in excluding certain evidence that supported his self-defense claim. Specifically, Minor sought to admit an unsworn out-of-court statement made by Dulin to police the morning after the shooting that he knew that the murder victim, Damien, "had a gun on him" because Damien "said it." Def. Ex. AA at 9. The trial court excluded the evidence as inadmissible hearsay. Minor concedes that the evidence was hearsay but maintains that it was admissible pursuant to two exceptions to the hearsay rule.

"A trial court has broad discretion to admit or exclude evidence, including purported hearsay." *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014). We will disturb the trial court's ruling only if it amounts to an abuse of discretion, "meaning the court's decision is clearly against the logic and effect of the facts and circumstances or it is a misinterpretation of the law." *Id.*

Hearsay is an out-of-court statement used to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless it falls under a hearsay exception. *Teague v. State*, 978 N.E.2d 1183, 1187 (Ind. Ct. App. 2012). "If a statement involves hearsay within hearsay, also known as multiple hearsay or double hearsay, the statement may still be admitted if 'each layer of hearsay' qualifies 'under an exception to the hearsay rule[.]'" *Id.*

(quoting *Palacios v. State*, 926 N.E.2d 1026, 1030 (Ind. Ct. App. 2010)); *see also* Ind. Evidence Rule 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms within an exception to the hearsay rule provided in these rules."). The evidence at issue here involves double hearsay because Dulin relayed to police a statement made by Damien. Thus, pursuant to Rule 805, Damien's statement to Dulin and Dulin's statement to police must both fall within a hearsay exception to be admissible. *See Palacios*, 926 N.E.2d at 1030.

[11] As to the first layer of hearsay, Minor argues that Damien's statement to Dulin constituted a present sense impression and was therefore admissible as an exception to the hearsay rule. A present sense impression is "[a] statement describing or explaining an event, condition or transaction, made while or immediately after the declarant perceived it." Ind. Evidence Rule 803(1). In order for a statement to fall under the present sense impression exception, three requirements must be met: (1) it must describe or explain an event or condition; (2) during or immediately after its occurrence; and (3) it must be based upon the declarant's perception of the event or condition. *Amos v. State*, 896 N.E.2d 1163, 1168 (Ind. Ct. App. 2008), *trans. denied* (2009).

[12] At a minimum, Damien's statement to Dulin fails to satisfy the first two requirements. We agree with the State that Damien's purported statement to Dulin neither described nor explained an event or condition. Indeed, due to the vagueness of Dulin's account, we have no idea what Damien's actual statement to Dulin was; we just know that "he said it" and that "it" was a reference to

Damien having a gun. Def. Ex. AA at 9. Assuming for the sake of argument that Damien's statement adequately described or explained the condition of having a gun, there is no indication as to when Damien purportedly made the statement to Dulin, so we have no idea whether Damien's statement was made in any temporal proximity to the condition of having a gun and his statement describing or explaining that condition to Dulin. Under the circumstances, Williams's purported statement to Dulin does not qualify as a present sense impression.

[13] In the alternative, Minor maintains that Damien's statement was admissible as a statement against interest because it "did tend to subject 19 year old Damien to criminal liability for carrying a handgun without a license." Appellant's Br. at 8. Indiana Evidence Rule 804(b)(3) provides an exception to the hearsay rule when the declarant is unavailable as a witness and the statement is:

> A statement that [] a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's propriety or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability.

[14] The requirement of reliability is embodied within this hearsay exception, as reliability is the ultimate justification of statements against interest. *Bryant v. State*, 794 N.E.2d 1135, 1142 (Ind. Ct. App. 2003), *trans. denied*. To qualify under this hearsay exception, the statement against interest must be incriminating on its face. *Jervis v. State*, 679 N.E.2d 875, 878 (Ind. 1997).

[15] As noted above, we are not aware what Damien's actual statement was, and consequently, we can hardly say that it was incriminating on its face. Again, even assuming that Damien's statement to Dulin was something along the lines of "I am carrying a gun on me," we would still be without sufficient information to determine anything about the legality of him carrying that gun that would lend reliability to the statement. Moreover, we cannot say that Damien's statement to his cousin claiming that he was carrying a gun is the type of statement that a reasonable person in his position would have made only if he believed it to be true; it is highly unlikely that Damien would have been concerned with potential criminal liability when he made that statement to his cousin. We agree with the trial court that Damien's statement was not admissible as a statement against interest pursuant to Indiana Evidence Rule 804(b)(3).

[16] Because Minor has failed to establish that Damien's statement to Dulin is an exception to the hearsay rule, we need not reach the admissibility of the second layer of hearsay, Dulin's unsworn statement to police. The trial court did not abuse its discretion when it excluded the evidence.

## Section 2 – The trial court's erroneous jury instruction regarding accomplice liability as it applied to attempted murder was harmless error.

[17] Minor next contends that the trial court abused its discretion in instructing the jury regarding accomplice liability as it applied to attempted murder. Although he acknowledges that the jury was properly instructed regarding attempted

murder, including the specific intent to kill element, he claims that the accomplice liability instruction given here was erroneous because it failed to inform the jury that the State was required to prove that he acted with specific intent to kill when he knowingly aided, induced, or caused another person to attempt murder. *See Hopkins v. State*, 759 N.E.2d 633, 637 (Ind. 2001) (when attempted murder is premised on accomplice liability, jury is required to be instructed that State must prove beyond a reasonable doubt that defendant acted with specific intent to kill). We agree, and the State concedes, that the accomplice liability instruction given here was erroneous for the precise reason argued by Minor. We are left only to determine whether such error is reversible.

[18] The State claims that Minor has waived this issue for appeal because, although he objected to the accomplice liability instruction when it was proposed by the State, he failed to tender an alternative instruction. Thus, the State argues that in order to obtain a reversal of his convictions, Minor must demonstrate that the erroneous instruction constituted fundamental error. *See Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014) (fundamental error is an extremely narrow exception to waiver rule requiring defendant to demonstrate error that made a fair trial impossible; it is a "daunting standard" that applies only in egregious circumstances), *cert. denied* 2015. Contrary to the State's assertion, a defendant is not ordinarily required to tender alternative instructions to preserve a claim of error. *Fry v. State*, 748 N.E.2d 369, 373 (Ind. 2001). Instead, to preserve the error for appeal, the defendant must simply object to the proposed instruction,

and such objection must be "sufficiently clear and specific to inform the trial court of the claimed error and to prevent inadvertent error." *Id.* (quoting *Scisney v. State*, 701 N.E.2d 847, 848 (Ind. 1998)).

[19] Our review of the record reveals not only that Minor made a contemporaneous objection to the proposed accomplice liability instruction, but also that it was clear from his specific objection that Minor was claiming that the instruction failed to inform the jury that an accomplice must have the specific intent to kill when he or she knowingly or intentionally aids, induces, or causes another to attempt to commit murder. Minor's objection was timely, articulate, on point, and sufficient to preserve his claim of error.

[20] Having concluded that Minor properly preserved this issue for appeal, we turn to the merits. We afford trial courts broad discretion in the manner of instructing the jury, and we review such decisions only for an abuse of that discretion. *Snell v. State*, 866 N.E.2d 392, 395 (Ind. Ct. App. 2007). Instructional errors are considered harmless where a conviction is clearly sustained by the evidence, and the instruction would not likely have impacted the jury's verdict. *Randolph v. State*, 802 N.E.2d 1008, 1013 (Ind. Ct. App. 2004), *trans. denied.* Indeed, to obtain reversal on appeal based upon an erroneous jury instruction, a defendant must affirmatively demonstrate that the instructional error prejudiced his substantial rights. *Schmid v. State*, 804 N.E.2d 174, 182 (Ind. Ct. App. 2004), *trans. denied.*

Minor relies on our supreme court's recent opinion in *Rosales v. State*, 23 N.E.3d 8 (Ind. 2015), in which the court considered the question of whether an accomplice liability instruction was "fundamentally erroneous for not stating that an accomplice to attempted murder must have the specific intent to kill when he or she knowingly or intentionally aids, induces, or causes another to attempt murder, where it is unknown if the defendant was convicted of attempted murder on the basis of accomplice or direct liability." *Id*. at 11. In *Rosales*, the jury was not instructed that specific intent to kill was required to properly convict Rosales under an accomplice liability theory, and, due to the general verdict form used by the jury, it was not possible to discern whether "the jury's verdict may have rested exclusively on accomplice liability grounds (including a finding of Rosales's 'knowing or intentional' mens rea), solely on direct liability grounds (including a finding of his 'specific intent to kill'), or a combination thereof." *Id*. at 15. Moreover, during closing arguments, the State "repeatedly told the jury that specific intent to kill was *not* required for accomplice liability." *Id*. Because of the State's repeated insistence that Rosales's specific intent to kill did not matter, coupled with the inaccurate jury instruction on accomplice liability, our supreme court concluded that Rosales incurred actual prejudice; that is to say, a fair trial was impossible under the

circumstances and fundamental error occurred. *Id*. at 16.[3]

[22] While we recognize that, unlike the defendant in *Rosales*, Minor need not meet the high burden of establishing fundamental error, he must still affirmatively demonstrate that the trial court's instructional error prejudiced his substantial rights. *See Schmid*, 804 N.E.2d at 182. Based upon the evidence presented, we cannot say that Minor has established such prejudice.

[23] Although the jury here was instructed regarding both direct and accomplice theories of liability, this is a unique case where the erroneous accomplice liability instruction was, in fact, "mere surplusage," and accomplice liability was not truly offered as a "distinct basis" for the jury to convict Minor for attempted murder. *Rosales*, 23 N.E.2d at 15 (emphasis omitted). The evidence indicates that Minor, and his codefendant Gray, each fired multiple shots at a group of young men, seven shots coming from one of their guns and nine shots coming from the other. Taylor testified that both Minor and Gray were firing weapons at him when he was struck and fell to the ground. Unlike in *Rosales*, the State made clear in its closing arguments that the specific intent to kill was required for attempted murder and that both Minor and Gray were directly

---

[3] It is noteworthy that the attempted murder victim in *Rosales* was struck from behind with a baseball bat, and therefore he did not see his attacker. Although the victim placed the defendant, a Hispanic man, at the scene, and another witness observed a Hispanic man holding a metal baseball bat, "considering that the getaway driver was also a Hispanic man, Rosales was not necessarily the Hispanic man [the witness] observed carrying the bat both before and after the attack…." *Rosales*, 23 N.E.3d at 16. Thus, while there was strong evidence that the defendant was the principal in the attack, accomplice liability was a relevant and viable theory for the jury to consider. As discussed more fully later, the same cannot be said regarding the current case.

liable as principals in the commission of the attempted murder of Taylor. Indeed, the State emphasized in its initial and rebuttal closing arguments that both Minor and Gray were firing at Taylor and that both possessed the specific intent to kill him. While accomplice liability was briefly mentioned by the State during closing, it is clear from our review of the record that the State was relying exclusively on the ample evidence of Minor's liability as a principal and his specific intent to kill Taylor.[4] Similarly, defense counsel's closing arguments made clear to the jury that specific intent to kill was required for an attempted murder conviction and that accomplice liability was not at issue. Under the circumstances, Minor has failed to affirmatively demonstrate that the trial court's erroneous jury instruction prejudiced his substantial rights, as we can safely say that no jurors voted to convict Minor of attempted murder under an accomplice liability theory absent the specific intent to kill. Therefore, we conclude that the instruction constituted harmless error.

---

[4] The evidence established that Damien, the murder victim, died of two fatal wounds, one wound inflicted from each weapon. Taylor, the attempted murder victim, was struck by one bullet that remains in his leg that could have come from either weapon. This appears to be the only reason that the jury was instructed on accomplice liability and why it was briefly mentioned by the State during closing arguments. During closing arguments the prosecutor stated,

> [Y]ou'll get a jury instruction on what it means to be an accomplice. Now in this case basically what this means is if it is Jamar Minor's bullet that is in Eric Taylor's leg as opposed to Jordan Gray's bullet that doesn't mean he gets to say well, we don't know whose bullet it was so I'm off the hook. Basically this is a long way to say you both did it.

Tr. at 730.

## Section 3 – The trial court did not abuse its discretion in refusing Minor's tendered jury instruction on criminal recklessness.

[24] Finally, Minor argues that the trial court abused its discretion in refusing to give his tendered jury instruction on the offense of criminal recklessness as an inherently lesser-included offense of attempted murder.[5] It is well established by our supreme court that criminal recklessness is not an inherently included offense of attempted murder. *Ellis v. State*, 736 N.E.2d 731, 734 (Ind. 2000). Minor acknowledges the state of Indiana law on this point and merely lodges his disagreement, opining that "criminal recklessness *should be* an inherently included lesser offense of attempted murder." Appellant's Reply Br. at 5 (emphasis added). Be that as it may, "we are bound to follow the precedent of our supreme court." *Smith v. State*, 777 N.E.2d 32, 38 n. 2 (Ind. Ct. App. 2002), *trans. denied* (2003). The trial court did not abuse its discretion in refusing the instruction.

[25] In sum, the trial court did not abuse its discretion in excluding, as inadmissible hearsay, Damien's purported statement to Dulin. Although we conclude that the trial court erroneously instructed the jury regarding accomplice liability as it applied to attempted murder, Minor has failed to demonstrate that he suffered prejudice as a result of the erroneous instruction. Therefore, the instructional error was harmless. Finally, the trial court did not abuse its discretion in

---

[5] Minor concedes that criminal recklessness was not a factually lesser-included offense of attempted murder as charged by the State here.

refusing Minor's proffered jury instruction on criminal recklessness. We affirm Minor's convictions.

Affirmed.

Brown, J., and Pyle, J., concur.