

FILED

Sep 28 2016, 7:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John W. Thomas,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 28, 2016

Court of Appeals Case No.
84A01-1602-CR-235

Appeal from the
Vigo Superior Court

The Honorable
David R. Bolk, Judge

Trial Court Cause No.
84D03-1501-F1-204

**Kirsch, Judge.**

[1] Following a jury trial, John W. Thomas ("Thomas") was convicted of attempted murder,[1] a Level 1 felony, attempted aggravated battery[2] as a Level 3 felony, attempted battery with a deadly weapon[3] as a Level 5 felony, and criminal recklessness[4] as a Level 6 felony. He appeals his conviction for attempted murder and raises the following restated issue: whether the trial court committed fundamental error when it instructed the jury that voluntary intoxication is not a defense to attempted murder.

[2] We affirm.

## Facts and Procedural History

[3] The facts most favorable to the verdict are that, on the evening of January 17, 2015, Damita Jaffe ("Jaffe") and her boyfriend Craig Robinson ("Robinson") were getting into Jaffe's vehicle when Thomas, whom Jaffe and Robinson knew, and his wife ("Annette") pulled up and parked. Thomas got out of his vehicle and approached Robinson, who also got out of his car, and the two exchanged words. Thomas's demeanor was aggressive, and Robinson smelled alcohol on Thomas's breath. Thomas asked, "[Y]ou think I'm playin'?" and then popped the trunk of his car to show Robinson that he had a shotgun in

---

[1] *See* Ind. Code §§ 35-42-1-1(1), 35-41-5-1.

[2] *See* Ind. Code §§ 35-42-2-1.5, 35-41-5-1.

[3] *See* Ind. Code §§ 35-42-2-1(g), 35-41-5-1.

[4] *See* Ind. Code § 35-42-2-2(b)(1).

there. *Tr.* at 57. Jaffe's adult son, Bobby Vinson ("Vinson"), walked up to the scene, Thomas's attention turned to Vinson, and they argued. Thomas retrieved the shotgun and pointed it at Vinson for two to three minutes. Thomas put the gun back in the trunk, but thereafter, Thomas swung at Vinson, and the two fought. Jaffe attempted to defuse the situation, grabbing Thomas's arm. She smelled alcohol on his breath. Eventually, Thomas and Annette drove away.

[4] A short time later, while Jaffe, Robinson, and Vinson were still outside, they heard gunshots. Thomas was fifty to seventy feet away, walking toward Jaffe's house while shooting a shotgun.[5] Jaffe was hit in the face and fell to the ground, near her vehicle. Jaffe heard more shots as she was on the ground. Robinson and Bobby ran and were not harmed. Jaffe's daughter, Anna Vinson ("Anna"), lived at Jaffe's house along with her two daughters, and at some point she had stepped out on the front porch and was grazed by pellets from Thomas's shotgun. Jaffe was lying injured on the ground near a car, and when she heard Thomas's footsteps running away, she drove to a nearby police station.

[5] Police later found Thomas and Annette at their home. They searched the car and found two empty vodka bottles. Police observed no injuries to Thomas when he was arrested later that night. The State initially charged Thomas with

---

[5] Thomas was using a 12-gauge shotgun loaded with birdshot, as opposed to buckshot or a single slug. *Tr.* at 500; *State*'s *Ex.* 18.

four counts of Level 1 felony attempted murder and one count of Level 5 felony robbery, but it later amended the charging information by removing a "knowing" mens rea from Counts 1 through 4 and removing the robbery charge. A four-day jury trial was held in December 2015.

[6] Annette, who at the time of trial was facing criminal charges of robbery and criminal recklessness related to the January 17, 2015 incident and had been granted use immunity, testified that, on the night in question, Vinson had pointed a pistol at Thomas and had hit Thomas in the face with it. Annette said that Vinson hit her, as well. She and Thomas got back in their car, and that, as they drove away from the scene, she heard two "loud noises" that she believed were gunshots. *Tr.* at 310, 312. She believed that "they was following us shootin' at us[.]" *Id.* at 312. She said that Thomas's face was bloody from being hit by Vinson, describing it as "all messed up" and that he "had blood everywhere." *Id.* at 310. They stopped to wipe his face, and Thomas got out and popped the trunk and left. She did not see where he went, but heard two "big booms," and when she looked out, she saw Thomas running back to the car. *Id.* at 317-18. Thomas got in the driver's seat and said, "[T]he f*ck is shootin' at us[.]" *Id.* at 323. Thomas and Annette sped away while "tryin' to ditch them," but eventually the car's "back tire blew," the vehicle left the roadway, and, after a short ride with a person who offered assistance, they walked home. *Id.* at 325. Annette testified that Thomas was intoxicated that night. *Id.* at 330.

[7]　The trial court instructed the jury regarding the elements of attempted murder, as well as the following lesser-included offenses:  Level 3 felony attempted aggravated battery; Level 5 felony attempted battery with a deadly weapon; Level 5 felony attempted battery resulting in serious bodily injury; and Level 6 felony criminal recklessness.  *Appellant's App*. at 145-165.  The trial court instructed the jury on the mens rea requirements for acting intentionally, knowingly, and recklessly.  *Id*. at 168-170, 173.  As Thomas was pursuing a claim of self-defense, the trial court instructed the jury on the elements of a self-defense claim.  *Id*. at 166.

[8]　The trial court also read Final Instruction No. 28 regarding voluntary intoxication.  It stated:

> Voluntary intoxication is not a defense to a charge of Attempted Murder.  You may not take voluntary intoxication into consideration in determining whether the Defendant acted with the intent to kill as alleged in the Information.
>
> Voluntary intoxication is not a defense to the lesser-included offenses of Attempted Aggravated Battery, a Level 3 Felony; Attempted Battery With a Deadly Weapon, a Level 5 Felony; Attempted Battery Causing Serious Bodily Injury, a Level 5 Felony; and Criminal Recklessness, a Level 6 Felony.  You may not take voluntary intoxication into consideration in determining whether the Defendant acted recklessly, knowingly, or intentionally as alleged in the lesser included offenses of those included in the Information.

*Id*. at 167.

The jury found Thomas guilty of: (1) Level 1 felony attempted murder with respect to Vinson; (2) Level 3 felony attempted aggravated battery with respect to Jaffe; (3) Level 5 felony attempted battery with a deadly weapon with respect to Anna; and (4) Level 6 felony criminal recklessness with respect to Robinson. *Id*. at 185-205. The trial court imposed an aggregate term of thirty-five years executed. Thomas now appeals his attempted murder conviction.

## Discussion and Decision

Thomas asserts that he was "too intoxicated" to form a specific intent to kill Vinson and that the trial court committed fundamental error "when it instructed the jury that it could not consider Thomas's intoxicated state when determining whether Thomas possessed the intent to kill Bobby Vinson." *Appellant's Br*. at 7, 10.

We afford trial courts broad discretion in the manner of instructing the jury, and we review such decisions only for an abuse of that discretion. *Minor v. State*, 36 N.E.3d 1065, 1072 (Ind. Ct. App. 2015), *trans. denied*. This Court will reverse a trial court's decision to give a particular instruction only if the giving of the instruction constituted an abuse of discretion. *Id.* In reviewing a preserved challenge to a jury instruction, the reviewing court considers: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. *Hubbard v. State*, 742 N.E.2d 919, 921 (Ind. 2001). An improper instruction will

merit reversal only if it "'so affects the entire charge that the jury was misled as to the law in the case.'" *Id.* (quoting *White v. State*, 547 N.E.2d 831, 835 (Ind. 1989)).

[12]     Here, trial court gave Final Instruction No. 28, which in relevant part stated:

> Voluntary intoxication is not a defense to a charge of Attempted Murder. You may not take voluntary intoxication into consideration in determining whether the Defendant acted with the intent to kill as alleged in the Information.

To preserve an instructional error for appeal, "the defendant must object to the proposed instruction, and such objection must be 'sufficiently clear and specific to inform the trial court of the claimed error and to prevent inadvertent error.'" *Minor*, 36 N.E.3d at 1072 (quoting *Fry v. State*, 748 N.E.2d 369, 373 (Ind. 2001)). At trial, Thomas did not object to Final Instruction No. 28 and, thus, has waived the issue for appeal. He correctly recognizes that he must establish fundamental error to succeed on appeal. Fundamental error is defined as an error so prejudicial to the rights of a defendant that a fair trial is rendered impossible. *Perez v. State*, 872 N.E.2d 208, 210 (Ind. Ct. App. 2007), *trans. denied*. To be considered fundamental, an error "'must constitute a blatant violation of basic principles, the harm, or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.'" *Id*. at 210-11 (quoting *Spears v. State,* 811 N.E.2d 485, 488 (Ind. Ct. App. 2004)).

[13] As Thomas reviews for us on appeal, the defense of voluntary intoxication in Indiana enjoys a long and varied history, ranging from not being recognized as a defense in early common law, to being permitted "to the extent that it negate[d] specific intent," which was eventually codified as Indiana Code section 35-41-3-5(b), which was thereafter determined to be unconstitutional in *Terry v. State*, 465 N.E.2d 1085, 1088 (Ind. 1984). *See Appellant's Brief* at 13-19. In 1996, the United States Supreme Court held that a state could prohibit a criminal defendant from offering evidence of voluntary intoxication to negate the requisite mens rea without violating the Due Process Clause of the United States Constitution. *Montana v. Egelhoff*, 518 U.S. 37, 56 (1996) ("The people of Montana have decided to resurrect the rule of an earlier era, disallowing consideration of voluntary intoxication when a defendant's state of mind is at issue. Nothing in the Due Process Clause prevents them from doing so, and the judgment of the Supreme Court of Montana to the contrary must be reversed."). Thereafter, in 1997, Indiana's legislature enacted Indiana Code section 35-41-2-5 ("the voluntary intoxication statute"), which provides:

> Intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant meets the requirements of IC 35-41-3-5.

Indiana Code section 35-41-3-5, to which the voluntary intoxication statute refers, states:

It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body:

(1) without his consent; or

(2) when he did not know that the substance might cause intoxication.

[14] In *Sanchez v. State,* 749 N.E.2d 509, 519-21 (Ind. 2001), a defendant challenged the voluntary intoxication statute and argued that it was error to give the voluntary intoxication instruction because it violated his right to present a defense under the Indiana Constitution.[6]  As the State observes, in *Sanchez*, our Supreme Court "undertook a comprehensive review of the [voluntary intoxication] statute" and concluded that it comported with the Indiana Constitution and did not violate a defendant's right to present a defense. *Appellee's Br*. at 20.  The *Sanchez* Court found that the voluntary intoxication statute does not negate the mens rea requirement, explaining:

> [W]e agree that a defendant has a right to present relevant evidence to negate an element of any charged offense.  But we disagree . . . that the voluntary intoxication statute denies this right.  The statute redefines the requirement of mens rea to include voluntary intoxication, in addition to the traditional mental states, i.e., intentionally, knowingly, and recklessly.

---

[6] The voluntary intoxication instruction in *Sanchez v. State*, 749 N.E.2d 509 (Ind. 2001), stated, "Voluntary intoxication is not a defense to the charge of Rape and Confinement.  You may not take voluntary intoxication into consideration in determining whether the Defendant acted knowingly or intentionally, as alleged in the information."  *Id*. at 511.

Thus, evidence of voluntary intoxication[7] does not negate the mens rea requirement. . . . Rather, it satisfies this element of the crime.

*Sanchez*, 749 N.E.2d at 520. Sanchez argued that the voluntary intoxication instruction bound the jury "to find intent where it may not have been proved, or to disregard evidence that negates intent," but the Court was not persuaded:

We do not find Sanchez's claim persuasive. The voluntary intoxication instruction does not unconstitutionally compel the jury to make a finding of intent. In effect, it provides that the crime is committed if it is done with the requisite mens rea or as a result of voluntary intoxication.

*Id*. at 521. The *Sanchez* Court observed that the voluntarily intoxicated offender is "at risk for the consequences of his actions, even if it is claimed that the capacity has been obliterated to achieve the otherwise requisite mental state for a specific crime." *Id.* at 520.

[15] Thomas argues on appeal that, although a defendant's voluntary act of becoming intoxicated satisfies the general intent to commit an offense, Indiana law treats attempted murder differently than other intent crimes, as it requires proof of specific intent to kill. Thomas relies on this "special treatment" given

---

[7] The *Sanchez* Court clarified that the voluntary intoxication statute "does not 'exclude relevant evidence,'" and thus "does not necessarily proscribe evidence of the defendant's use of alcohol or drugs. . . . [T]his evidence may be admissible as general background, or as relevant to something other than lack of mens rea, e.g., identity." 794 N.E. at 519-20.

to attempted murder,[8] arguing that "this uniqueness affects the constitutionality of Indiana Code section 35-41-2-5, the voluntary intoxication statute, as applied to attempted murder."[9] *Appellant's Br*. at 8. His position is that "[w]hile our Legislature has defined voluntary intoxication as one means of establishing the *general* intent element of a criminal offense, it has not defined voluntary intoxication as a means of establishing *specific* intent for crimes such as attempted murder." *Id*. at 18 (emphasis added). He contends, then, that the trial court's Final Instruction No. 28, which prohibited the jury from considering evidence of intoxication when determining whether Thomas possessed an intent to kill Vinson, deprived him of a fair trial and constituted fundamental error such that his conviction for attempted murder should be reversed.[10]

[16] The State responds that Final Instruction No. 28 was a correct statement of the law, and it was not error, let alone fundamental error, to give it. We agree.

---

[8] "Attempted murder is a special case, deserving special treatment." *Richeson v. State*, 704 N.E.2d 1008, 1010 (Ind. 1998) (addressing special treatment of attempted murder in context of jury instructions).

[9] We note that Thomas does not contend that there was not enough evidence of intoxication for the trial court to give the instruction. Indeed, he argues that he was "too intoxicated" to form the requisite intent to kill Vinson. *Appellant's Br*. at 10; *see also Reply Br*. at 4 ("Clearly Thomas [] established that he was intoxicated; otherwise, the trial court would not have found it necessary to instruct the jury that it could not consider the evidence for any reason.")

[10] We note that Thomas's argument throughout his brief is that the voluntary intoxication instruction denied him of a fair trial, but he includes the general statement that he was "precluded from presenting evidence" of his intoxication "that could have negated one of the essential elements of the offense of attempted murder[,]" and this violated his constitutional right to present a defense and made a fair trial impossible. *Appellant's Br*. at 19. He does not further explain what evidence he was precluded from presenting or when that occurred during trial. Thus, Thomas has waived any claim that he was erroneously precluded from presenting evidence for failure to present cogent argument or support. Ind. Appellate Rule 46(A)(8).

The voluntary intoxication statute expressly states that voluntary intoxication "is not a defense to a prosecution *for an offense*." Ind. Code § 35-41-2-5 (emphasis added). Thomas is effectively asking us to carve out an exception for attempted murder, *i.e.*, voluntary intoxication is not a defense to a prosecution for an offense, except for the offense of attempted murder. Thomas cites to no case law in support of his position. Like Thomas, we found no case that directly speaks to the precise question of whether the voluntary intoxication statute applies to the offense of attempted murder. However, at least a couple of cases, involving an appeal from an attempted murder conviction, have touched on the fact that voluntary intoxication is not a defense.

[17]     In *Berry v. State*, 969 N.E.2d 35 (Ind. 2012), our Supreme Court – while addressing a related issue concerning whether Berry, who was convicted of attempted murder, had successfully raised an insanity defense at trial – acknowledged that voluntary intoxication is not a recognized defense. At Berry's bench trial for attempted murder for striking another person in the head with a claw hammer, evidence was presented that Berry began abusing alcohol at age nine and became a daily drinker during high school. *Id.* at 36. He also used marijuana, cocaine, methamphetamine, LSD, mushrooms and ecstasy, and although at some point he stopped using drugs, he continued drinking alcohol. *Id.* He had been hospitalized multiple times for symptoms related to drug and alcohol abuse and bipolar disorder. *Id.* Berry pursued an insanity defense, but the trial court rejected it, finding, among other things,

> Given the Defendant's longstanding and chronic alcoholism coupled with heavy drinking on the weekend preceding the assault on [the morning of the incident], the Court concludes that these symptoms *were brought on by the Defendant's voluntary abuse of alcohol,* rather than the result of Bipolar Disorder or other mental disease or defect.

*Id*. at 39 (emphasis added). The court of appeals reversed, finding that the trial court erroneously rejected Berry's insanity defense because Berry's case fit within the doctrine of "settled insanity."[11] *Id*. at 37.

[18] On transfer, our Supreme Court addressed the "murky" "intersection of voluntary intoxication and insanity," and held that "[u]ltimately, it is for the trier of fact to determine whether the accused's conduct was the result of a diseased mind—regardless of the source of the disease—or was the result of voluntary intoxication." *Id*. at 43. The *Berry* Court concluded that, given the highly deferential standard of review and the evidence presented, it was within the trial court's discretion to find that Berry's behavior was caused by the voluntary abuse of alcohol and not a mental disease or defect as defined in Indiana's insanity statute. *Id*. at 44. In its analysis, the Court recognized – on two occasions – that temporary mental incapacity produced by voluntary intoxication "'is no legal excuse for, or defense to, a crime.'" *Id*. at 38 (quoting *Jackson v State*, 273 Ind. 49, 52, 402 N.E.2d 947, 949 (1980)), and at 42. It

---

[11] Indiana recognizes situations "where the ingestion of intoxicants, though voluntary, has been abused to the point that it produced mental disease," which is referred to as "settled" or "fixed" insanity. *Berry v. State*, 969 N.E.2d 35, 42 (Ind. 2012).

further expressly noted the codification of this principle in Indiana Code section 35-41-2-5, the voluntary intoxication statute, stating that intoxication is not a defense in a prosecution for an offense and may not be taken into consideration if determining the existence of a mental state that is an element of the offense, unless the defendant meets the requirements of involuntary intoxication. *Id.* at 38 n.1. Even though *Berry* addressed the insanity defense and whether the defendant had successfully proven it, and thus it is not squarely on point with the present case, we nevertheless find the *Berry* Court's acknowledgement of the voluntary intoxication statute to be relevant and insightful as to its view of the voluntary intoxication statute and, particularly, that statute's application to attempted murder.[12]

[19] Given that the Indiana legislature has not expressly identified attempted murder as an exception to the law negating voluntary intoxication as a defense, and our Supreme Court has not expressed an indication that any such exception exists, we decline Thomas's invitation to create one. Final Instruction No. 28 was a

---

[12] A colleague on this court also has recognized, in an appeal from an attempted murder conviction, that voluntary intoxication is not a defense. In *Collier v. State*, 846 N.E.2d 340 (Ind. Ct. App. 2006), *trans. denied*, a majority of this court reversed a defendant's attempted murder conviction because, after taking box cutters, an ice pick and binoculars, and parking his vehicle at his estranged wife's place of employment to wait for her to exit, he fell asleep. The *Collier* court determined that his conduct did not constitute a substantial step toward the commission of the crime of murder, but was instead mere preparation. *Id.* at 342, 350-51. Judge Barnes dissented, finding that the evidence presented was sufficient to allow a reasonable jury to find that Collier had taken a substantial step toward the commission of murder and that to conclude otherwise infringed on the prosecutor's charging discretion and the jury's exclusive province to weigh the evidence. *Id.* at 354. In his dissent, Judge Barnes opined that the fact that Collier was "passed out asleep" when police arrived should not disqualify his criminal intent, noting, "Collier does not claim he was involuntarily intoxicated, and *voluntary intoxication is no longer a defense in Indiana to a criminal charge.*" *Id.* at 353 n.2 (emphasis added).

correct statement of the law, and Thomas has not established that the trial court committed fundamental error when it instructed the jury.[13]

[20] Affirmed.

[21] May, J., and Crone, J., concur.

---

[13] The State alternatively argues that "[e]ven if voluntary intoxication was a permitted defense in Indiana, . . . there was no evidence to support that [Thomas] was so intoxicated that he could not form the requisite intent[,]" as there was no evidence regarding the time and amount of consumption nor what types of alcoholic beverages were consumed. *Appellant's Br.* at 21, 23. Because we find that under current Indiana law voluntary intoxication is not a defense to "an offense," including attempted murder, we do not reach this argument.