# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 21 2017, 5:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Bryson Terrell Rolling,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 21, 2017

Court of Appeals Case No.
48A04-1612-CR-2848

Appeal from the Madison Circuit Court.
The Honorable Mark Dudley, Judge.
Trial Court Cause No.
48C06-1604-F5-845

**Barteau, Senior Judge**

# Statement of the Case

[1] Bryson Terrell Rolling appeals his conviction of aggravated battery, a Level 3 felony.[1]  We affirm.

# Issues

[2] Rolling raises two issues, which we restate as:

I.     Whether the prosecutor engaged in misconduct during voir dire and closing argument.

II.     Whether the trial court erred in failing to give a jury instruction on a lesser included offense.

# Facts and Procedural History

[3] On February 25, 2016, Rolling was incarcerated at the Madison County Jail. He entered a cell that had been assigned to Christopher Barrett and David Scarberry.  Jail rules forbade an inmate from entering another inmate's cell without permission, and neither Barrett nor Scarberry had given Rolling permission to enter.

[4] Barrett and Scarberry were in the cell.  Barrett was lying in his bunk with a blanket over his head.  Rolling struck a metal desk repeatedly, making a loud noise.  He yelled at Barrett to wake up.  Barrett stood up and moved toward Rolling, telling him to stop making noise and leave.  Barrett did not make any threatening moves because Rolling was "a lot bigger" than him.  Tr. Vol. I, p.

---

[1] Ind. Code § 35-42-2-1.5 (2014).

241. Barrett was five feet, six inches tall and weighed 130 pounds, while Rolling was six feet, four inches tall and weighed 300 pounds.

[5] Rolling punched Barrett in the face, hitting his jaw. Barrett fell to the ground, bleeding profusely from his mouth. He was in "excruciating pain" and had never felt anything like it before. *Id.* at 242. Rolling told Barrett to tell jail officials that he injured himself by falling off the bed during a seizure. In addition, Rolling told Scarberry to "be quiet and shut up." Tr. Vol II, p. 52. Rolling left the cell and Barrett sought medical assistance.

[6] Jail officials transferred Barrett to a hospital in Indianapolis. An examination revealed Rolling had broken Barrett's jaw. A doctor implanted a steel plate in Barrett's jaw and wired his mouth shut. The wires stayed in place for six to eight weeks. Barrett was on a liquid diet for five weeks and was restricted to soft foods for two to three weeks after that. During that period of time, a "fairly good size [sic] piece of necrotic bone," or dead bone, worked its way out of the jaw. *Id.* at 125. At the time of Rolling's trial, the steel plate was still in place and Barrett had to monitor his mouth for infections.

[7] The State initially charged Rolling with battery resulting in serious bodily injury, a Level 5 felony. Rolling filed a notice of intent to raise a claim of self-defense. The State later amended the information to add a claim of aggravated battery, a Level 3 felony, and to delete the Level 5 felony. Rolling testified in his own defense at trial, claiming he struck Barrett in self-defense. The jury

determined Rolling was guilty of aggravated battery, the court imposed a sentence, and this appeal followed.

# Discussion and Decision

## I. Prosecutorial Misconduct

Rolling argues the prosecutor engaged in misconduct during voir dire and closing arguments. The State responds that Rolling has waived his claims and that none of the prosecutor's statements amount to fundamental error.

When reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct and, if so, (2) whether the misconduct, under the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.*

To preserve a claim of prosecutorial misconduct, the defendant must object and request an admonishment of the jury at the time the alleged misconduct occurs. *Neville v. State*, 976 N.E.2d 1252, 1258 (Ind. Ct. App. 2012) *trans. denied*. If further relief is required, the defendant must also move for a mistrial. *Jerden v. State*, 37 N.E.3d 494, 498 (Ind. Ct. App. 2015). Failure to object and request an admonishment results in waiver. *Id.*

[11]     If a defendant waives a claim of prosecutorial misconduct, we will review the alleged misconduct only for fundamental error. *Deaton v. State*, 999 N.E.2d 452, 454 (Ind. Ct. App. 2013), *trans. denied*. The defendant must establish both prosecutorial misconduct and fundamental error. *Id.* To be fundamental error, the misconduct must have made a fair trial impossible or have been a clearly blatant violation of basic and elementary principles of due process that presents an undeniable and substantial potential for harm. *Id.* Fundamental error is an extremely narrow exception to the waiver rule, and the defendant must show that under the circumstances, the trial court erred by not raising the issue sua sponte. *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014). Fundamental error review is meant to permit appellate courts a means to correct "the most egregious and blatant trial errors that otherwise would have been procedurally barred." *Id.*

## A. Voir Dire

[12]     Rolling argues the prosecutor engaged in misconduct during voir dire by: (1) indoctrinating potential jurors to accept the State's view of the law and the evidence; (2) inappropriately educating the jurors about legal issues in the case; and (3) inflaming the jury by discussing crimes not relevant to this case.

[13]     The purpose of voir dire is to discover whether any prospective juror has an opinion, belief, or bias that would affect or control his or her determination of the issues to be tried, thus providing a basis for a challenge. *Malloch v. State*, 980 N.E.2d 887, 906 (Ind. Ct. App. 2012), *trans. denied*. Voir dire examination is not intended to "educate" or "indoctrinate" jurors. *Coy v. State*, 720 N.E.2d 370, 372 (Ind. 1999) (quotation omitted).

[14] Proper examination of potential jurors may include questions designed to disclose attitudes about the type of offense charged. *Malloch*, 980 N.E.2d at 906. In addition, the parties may also attempt to uncover the voir dire panelists' preconceived ideas about a defense the defendant intends to use. *Gregory v. State*, 885 N.E.2d 697, 707 (Ind. Ct. App. 2008), *trans. denied*. The parties may pose hypothetical questions, provided they do not suggest prejudicial evidence not presented at trial. *Id.*

[15] Rolling concedes he did not object to every instance of alleged prosecutorial misconduct during voir dire. He stated two objections supported by reasons. The first occurred when the prosecutor was questioning jurors about the elements of the offense, as follows:

> [Prosecutor]: The next word I want define [sic] and talk with you about it is [sic] the word protracted. Does anyone know what protracted means? What does that word mean? [Potential Juror], what do you think? What does the word protracted mean?
>
> [Potential Juror]: I couldn't tell you.
>
> [Prosecutor]: Couldn't tell you?
>
> [Potential Juror]: Nope.
>
> [Prosecutor]: Okay. Does anybody know what the word protracted means?
>
> [Potential Juror]: Does that mean he fought back, or no?
>
> [Prosecutor]: No.
>
> [Potential Juror]: Pulling evidence?
>
> [Prosecutor]: I'm sorry?
>
> [Potential Juror]: Protracting, pulling evidence?

[Prosecutor]: Protracted, yeah. It's a hard - It's sort of - I mean, you know, - Let me just define it, okay? Cause this is important. Protracted, loss, or impairment is what we have to prove, you know. You inflict injury and by doing so you cause somebody to have protracted loss or impairment. Protracted means to draw out or lengthen in time. Right? It means the injury sort of - it's not momentary. Right? It's sort of something that lasts for a while. Um, how long do you think an injury would have to last in order for it to be protracted?

[Rolling]: Objection, Your Honor, I think this may go to the issue of the case and I'm not sure that it's proper for the jury to express an opinion in regard to that.

[Trial Court]: Mr. Kopp?

[Prosecutor]: I think it's absolutely relevant. I think it's not (indiscernible). We need to know what they would basically think of this protracted. How is that an inappropriate question, asking them to - their opinion of an element that I just defined that is, uh, charged in this case.

Tr. Vol. I, pp. 61-63. The trial court overruled Rolling's objection after a bench conference.

[16]   The prosecutor's discussion and questioning about the term "protracted" did not amount to misconduct. The nature and extent of the injury was at issue in the case, and the prosecutor was entitled to ask potential jurors about that topic. Further, the prosecutor provided a definition of "protracted" only after the panelists indicated they did not know what the word meant. The prosecutor would have been hard pressed to question the jurors about a term they did not understand. Finally, the prosecutor also told the jurors that the judge would be giving them definitions of terms and the judge is "the best source of the law,

absolutely." *Id.* at 60. The prosecutor's actions did not place Rolling in grave peril to which he should not have been subjected.

[17] The second occasion Rolling objected and stated a supporting reason occurred during the prosecutor's questioning of potential jurors about self-defense, as follows:

> [Prosecutor]: Right? I used the example of the bank robber. The guy goes into to rob the bank. You know? He's got a gun out, he's robbing the back [sic], police officer walks in, shoots at him because he's like using deadly force on somebody something, and then he shoots back and hits the police officer. Do you think that guy can't be prosecuted for killing a police officer because he was defending himself because the police officer shot first? Does anybody here think that? No, of course not. Right? And that person was, you know, defending himself in a sort of way when people think about. Well, he shot at me so I shot back. Well, yeah, you know, I mean - but you didn't have a right to be there and you were at fault because you were robbing the bank and committing a crime so you don't get to claim self defense when you come into this courtroom or any other courtroom.

> [Rolling]: I object, again -

> [Trial Court]: That's more of an argument -

> [Rolling]: Yes.

> [Trial Court]: - than question.

> [Rolling]: Thank you.

> [Trial Court]: That's -

> [Prosecutor]: I'm asking if they agree with that.

> [Rolling]: I think -

> [Trial Court]: Objection is sustained.

*Id.* at 165.[2]

[18]  The prosecutor's statement may not have been good strategy. *See Gregory*, 885 N.E.2d at 707 ("A more effective voir dire would incorporate the use of open-ended questions that allow prospective jurors in response to freely express an opinion on the point of inquiry."). Poor strategy does not amount to prosecutorial misconduct. The prosecutor asked the panel several questions during the statement, attempting to draw out their views on the subject of Rolling's claim of self-defense. The prosecutor's statement did not place Rolling in grave peril to which he should not have been subjected.

[19]  Next, Rolling alleges several instances of prosecutorial misconduct to which he did not object during voir dire. Having reviewed the record, we conclude none of the instances rise to the level of fundamental error. The prosecutor asked the jurors about crimes not at issue in this case, as part of a discussion on self-defense. The State needed to ascertain potential jurors' thoughts on Rolling's defense. Further, the court had previously told all potential jurors that the offense of battery was the only alleged crime at issue in the case.

[20]  In addition, there were several instances where the prosecutor appeared to be explaining points of law rather than asking the panelists to answer open-ended questions, but those instances were more isolated than pervasive over the course

[2] Rolling objected three other times during the prosecutor's questioning of potential jurors about self-defense, but the record does not reflect the reasons for the objections. As a result, the objections did not preserve any issue for appellate review.

of voir dire. *See Emerson v. State*, 952 N.E.2d 832, 837 (Ind. Ct. App. 2011) (no fundamental error in prosecutor's questioning panel about bullying; even if the questions were improper, they were merely one topic in a lengthy procedure), *trans. denied.* We cannot conclude the instances cited by Rolling were clearly blatant violations of basic and elementary principles of due process that presented an undeniable and substantial potential for harm. We find no error.

### B. Closing Arguments

[21] Rolling challenges three comments by the prosecutor during closing arguments, but he did not object to any of them. He must thus demonstrate that the comments amounted to both misconduct and fundamental error.

[22] It is proper for a prosecutor to argue both law and fact during final argument and to propound conclusions based upon his or her analysis of the evidence. *Ellison v. State*, 717 N.E.2d 211, 213 (Ind. Ct. App. 1999), *trans. denied.* "Ours is an adversarial process, and comments of counsel are not evidence." *Nevel v. State*, 818 N.E.2d 1, 5 (Ind. Ct. App. 2004).

[23] The prosecutor began his rebuttal to Rolling's closing argument as follows: "That's called a shotgun defense, that's what that is. Throw a bunch of crap at the wall and see if any of it, any of it sticks, that's exactly what that is." Tr. Vol. III, p. 14. He later repeated, "This is what I'm talking [sic], throw crap at the wall and see what sticks." *Id.* at 21. The prosecutor later said again, "That's just more stuff being thrown at the wall." *Id.* at 23.

The prosecutor's insulting characterization of defense counsel's tactics cannot be condoned, but the comments did not amount to misconduct, let alone fundamental error. The Indiana Supreme Court has determined that remarks similar to those at issue here do not place defendants in grave peril under all of the circumstances of the case. *See Ryan*, 9 N.E.3d at 670 (prosecutor's characterization of defense strategy as a "trick" was not misconduct); *Brock v. State*, 423 N.E.2d 302, 305 (Ind. 1985) (prosecutor's statement that defense counsel was "pulling the most low life tricks" was improper but did not amount to misconduct). There is no reversible error.

## II. Jury Instruction on Lesser Included Offense

Rolling argues the trial court erred in refusing to give a jury instruction on the lesser included offense of battery resulting in serious bodily injury, a Level 5 felony. The State claims Rolling has waived his right to raise this claim on appeal. We agree with the State.

In general, when a party objects to a proposed instruction by the trial court or an opposing party, the party need not tender an alternative instruction to preserve a claim of error for appellate review. *Minor v. State*, 36 N.E.3d 1065, 1072 (Ind. Ct. App. 2015), *trans. denied*; *see also McDowell v. State*, 885 N.E.2d 1260, 1262-63 (Ind. 2008) (challenge to instruction given by trial court preserved for appellate review by objection alone). By contrast, where, as in this case, a party asks the court to instruct the jury on an omitted point of law, the failure to tender a proposed written instruction waives any potential error in

the court's omission of the instruction. *White v. State*, 687 N.E.2d 178, 179 (Ind. 1997); *see also Ortiz v. State*, 766 N.E.2d 370, 375 (Ind. 2002) (claim of failure to instruct jury on territorial jurisdiction waived because defendant failed to tender proposed instruction).

[27] Rolling concedes he did not give the trial court a proposed written instruction on lesser included offenses. He asserts he did not waive his jury instruction claim because: (1) the parties discussed the issue at length with the trial court; and (2) the State did not object at trial to the lack of a written instruction. Neither of these assertions provides a basis for the Court to disregard the Indiana Supreme Court's precedent on the question of waiver. Rolling has waived his jury instruction claim.[3]

# Conclusion

[28] For the foregoing reasons, we affirm the judgment of the trial court.

[29] Affirmed.

Altice, J., concurs.

Riley, J., concurs in result with opinion.

---

[3] The State further claims the omission of the jury instruction does not amount to fundamental error, but we need not address this point because Rolling is not presenting a claim of fundamental error on this issue.

# IN THE
# COURT OF APPEALS OF INDIANA

Bryson Terrell Rolling,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
48A04-1612-CR-2848

**Riley, Judge, concurring in part and concurring in result in part.**

[30]    While I largely concur with the majority's conclusions in this case, I must concur only in result with the majority's determination that certain conduct by the prosecuting attorney was appropriate. Specifically, I disagree that the prosecutor's questions and discussion surrounding the term "protracted" during *voir dire* did not amount to misconduct. (Tr. Vol. I, p. 62). It is well established that "the function of *voir dire* examination is not to educate jurors." *Perryman v. State*, 830 N.E.2d 1005, 1008 (Ind. Ct. App. 2005). Rather, it "is to ascertain

whether prospective jurors can render an impartial verdict based upon the law and the evidence, and 'weed out' those who show they cannot be fair to either side." *Gibson v. State*, 43 N.E.3d 231, 238 (Ind. 2015). Thus, "questions should be limited to 'testing the capacity and competency of prospective jurors.'" *Id.* Questions "that 'seek to shape the favorable jury by deliberate exposure to the substantive issues in the case' are not permitted." *Id.*

[31] In this case, the prosecutor imparted his understanding of the definition of the term for the potential jurors, specifically adding that it "is important" to the case. (Tr. Vol. I, p. 62). In fact, "protracted loss or impairment of the function of a bodily member or organ" was an element of the charged offense that the State was obligated to prove beyond a reasonable doubt. Ind. Code § 35-42-2-1.5(2). Thus, the prosecutor's discussion of the meaning of "protracted" amounted to an attempt to educate the jurors on a substantive issue of the case, which goes beyond exploring juror biases. (Tr. Vol. I, p. 62).

[32] It is not the role of the prosecutor during *voir dire* to instruct the jury on the law and facts of a case. Instead, in all criminal cases, it is the right of the jury "to determine the law and the facts." *Keller v. State*, 47 N.E.3d 1205, 1208 (Ind. 2016) (quoting Ind. Const. Art I, § 19). In addition to defining "protracted" for the venire, the prosecutor took it upon himself to educate the jury panel on other substantive matters of the law—even to the point that the trial court admonished him for "lecturing more than . . . asking questions." (Tr. Vol. II, p. 72). As the trial court aptly stated, *voir dire* is "designed to [e]licit opinions from the jurors." (Tr. Vol. II, p. 72). Nevertheless, while I find that the prosecutor's

use of *voir dire* to lecture on the meaning of "protracted" amounted to misconduct, I agree with the majority that the misconduct did not place Rolling in a position of grave peril to which he should not have been subjected. (Tr. Vol. I, p. 62). Thus, I concur in result.