

FILED

Apr 11 2017, 11:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Corey L. Scott
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| C.J., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | April 11, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1605-JV-1032 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn A. Moores, Judge <br><br> The Honorable Gary Chavers, Magistrate <br><br> Trial Court Cause No. <br> 49D09-1409-JD-2319 |

**Najam, Judge.**

## Statement of the Case

[1] C.J. appeals from the juvenile court's order modifying a dispositional decree following his adjudication as a delinquent child for battery, as a Class A

misdemeanor when committed by an adult. C.J. presents a single issue for our review, namely, whether the juvenile court abused its discretion when it placed him with the Department of Correction ("DOC"). However, because C.J. has been released from the DOC since he initiated this appeal, we dismiss the appeal as moot.

## Facts and Procedural History

[2] On September 18, 2014, then fourteen-year-old C.J. and three of his friends battered A.A. outside the entrance of a Family Dollar store in Indianapolis. Indianapolis Metropolitan Police Department officers arrested C.J., and, on October 9, after C.J. admitted the allegations in the State's delinquency petition, the juvenile court adjudicated him a delinquent for committing battery, as a Class A misdemeanor when committed by an adult ("JD-2319"). At the dispositional hearing on November 6, the juvenile court placed C.J. on probation.

[3] In the meantime, on October 22, the State filed a delinquency petition against C.J. alleging that he committed what would be armed robbery, as a Level 3 felony if committed by an adult; battery, as a Level 5 felony if committed by an adult; criminal recklessness, as a Level 6 felony if committed by an adult; dangerous possession of a firearm, a Class A misdemeanor if committed by an adult; carrying a handgun without a license, as a Class A misdemeanor if committed by an adult; and resisting law enforcement, as a Class A misdemeanor if committed by an adult. On November 6, C.J. admitted to having committed what would be armed robbery, as a Level 3 felony if

committed by an adult, and dangerous possession of a firearm, a Class A misdemeanor if committed by an adult. The State dismissed the other charges. The juvenile court entered true findings and placed C.J. on probation with suspended commitment to the DOC ("JD-2566"). The court also ordered C.J. to participate in the "Cross System Care Coordination program" and placed him at Transitions Academy. Appellant's App. Vol. III at 94.

[4] After spending five months at Transitions Academy, shortly after his release C.J. was arrested for an incident that "involved a gun[.]" Tr. at 37. The State filed a delinquency petition, but it ultimately dismissed the charges stemming from that incident.

[5] Following two failed drug screens, the State filed its fourth petition to modify disposition requesting that the juvenile court place C.J. in the DOC. Following a hearing on that petition, on April 14, 2016, the juvenile court issued its dispositional order stating in relevant part as follows:

> IV. ORDERS.
>
> A. Respondent is awarded to the Guardianship of the Indiana Department of Correction for housing in any correctional facility for children until the age of 21, unless sooner released by the Department of Correction. The respondent is detained pending transfer. The Court recommends the respondent be committed for a period of 12 months. The Court recommends the respondent complete drug/alcohol counseling, complete [a] counseling program and complete a Vocational and/or GED program.
>
> * * *

C.    This disposition is consistent with the safety and best interest of the child and is the least restrictive and most appropriate setting available close to the parent(s)' home, least interferes with the family's autonomy, is least disruptive of family life, imposes the least restraint on the freedom of the child and the child's parent, guardian or custodian; and provides a reasonable opportunity for participation by the child's parent, guardian or custodian.

V.  REASONABLE EFFORTS.  Title IV-E and Statutory (IC 31-34-5-2) Findings:

The Court finds that it is in the best interests of the child to be removed from the home environment and remaining in the home would be contrary to the welfare of the child because:

- of the allegations admitted
- the allegations listed in the petition
- the nature of the probable cause affidavit
- the child has received numerous services with this court
- Respondent is on a suspended commitment to the Department of Correction for Armed Robbery, Dangerous Possession of a Handgun[,] and Battery.

Respondent was in placement at Transitions from December 2014 until June 2015.  Since being released from Transitions respondent has had four separate petitions to modify filed of which two were found true.  Respondent has had numerous community[-]based services with Cross System Care.

Respondent has had positive drug screens including a December 2015 positive test for cocaine.

Dr. Danielle Nance conducted an updated psychological evaluation on [C.J.] on March 7th[,] 2016.  Dr. Nance concluded that [C.J.] has a diagnostic impression of conduct disorder, substance abuse, and anxiety disorder.  Dr. Nance noted that

[C.J.]'s "behaviors are concerning" and he "continues to present with a propensity to act in antisocial ways." Dr. Nance added that [C.J.] is "impulsive[/]aggressive and shows a disregard for his own and others['] safety." Dr. Nance recommended residential treatment.

The respondent scored as a high risk on his most recent IYAS tools.

The Court finds that reasonable efforts were made by Marion County Probation Department to prevent or eliminate the need for removal of the child. The statements of reasonable efforts as set forth in the pleadings, reports, and documents of Marion County Probation Department and/or all other service providers filed herein are incorporated by reference.

The Court finds responsibility for the placement and care of the child is ordered or continues to be ordered to the Department of Correction.

Appellant's App. at 23-26. On April 18, C.J. filed an emergency motion to stay commitment to the DOC and for reconsideration of the dispositional order, which the juvenile court denied. This appeal ensued.[1]

[6] C.J. was released from the DOC in October 2016. On February 22, 2017, we issued an Order to Show Cause why this appeal should not be dismissed as moot. In his verified response, C.J. alleged that, due to possible negative

---

[1] We note that the parties include cause numbers for both JD-2319 and JD-2566 in the captions for their briefs on appeal. The juvenile court's order from which C.J. appeals, however, lists only the cause number for JD-2319. We also note that, while C.J. filed his notice of appeal on May 10, 2016, due to delays in the trial court and various defects, the case was not fully briefed until February 16, 2017.

collateral consequences he would face as a result of the DOC placement, his appeal was not moot.

## Discussion and Decision

[7] C.J. contends that the juvenile court abused its discretion when it awarded wardship over him to the DOC. But we do not reach the merits of C.J.'s appeal because the issue is moot. "Mootness arises when the primary issue within the case 'has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved.'" *S.C. v. S.B. (In re M.B.)*, 51 N.E.3d 230, 233 (Ind. 2016) (quoting *In re Lawrance*, 579 N.E.2d 32, 37 (Ind. 1991)). In other words, "[w]hen a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed." *J.M. v. Ne. Ctr., Inc. (In re J.M.)*, 62 N.E.3d 1208, 1210 (Ind. Ct. App. 2016). Here, because the DOC released C.J. in October 2016, we cannot render effective relief to C.J., and the appeal is moot. *Id.* Indeed, in the context of sentencing an adult after a conviction, our supreme court has stated that, "[o]nce 'sentence has been served, the issue of the validity of the sentence is rendered moot.'" *Lee v. State*, 816 N.E.2d 35, 40 n.2 (Ind. 2004) (quoting *Irwin v. State*, 744 N.E.2d 565, 568 (Ind. Ct. App. 2001)).

[8] Still, "Indiana courts have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of 'great public interest.'" *In re Lawrance*, 579 N.E.2d at 37. Cases found to fall within the public interest exception typically contain issues likely to recur. *Id.*

For instance, in *In re Lawrance*, the issue presented on appeal was "whether the parents of a patient in a persistent vegetative state may authorize the withdrawal of artificially provided nutrition and hydration from their never-competent daughter." *Id.* at 34. Our supreme court addressed the merits of the appeal because, "irrespective of the death of the patient in this litigation, many Indiana citizens, health care professionals, and health care institutions expect to face the same legal questions in the future." *Id.* at 37. In addition, this court has consistently held that the "question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society." *In re J.B.*, 766 N.E.2d 795, 798 (Ind. Ct. App. 2002). Accordingly, we routinely consider the merits of appeals brought by persons alleging insufficient evidence to support involuntary commitments. *See, e.g.*, *In re J.M.*, 62 N.E.3d at 1208.

[9] Here, we cannot say that the issue of C.J.'s placement with the DOC involves a question of great public interest.[2] Indeed, in response to this court's order to

---

[2] We note that this court has addressed the merits of juveniles' appeals of short-term detention orders while citing the "great public interest" exception to the mootness doctrine. *See, e.g.*, *W.R.S. v. State*, 759 N.E.2d 1121, 1123 (Ind. Ct. App. 2001); *B.L. v. State*, 688 N.E.2d 1311, 1312 n.1 (Ind. Ct. App. 1997). However, in each of those cases, the ultimate reason given for addressing the otherwise-moot appeal was "because the issues [were] likely [to] arise again but w[ould] evade appellate review[.]" *See, e.g.*, *W.R.S.*, 759 N.E.2d at 1123 (citing *A.D.*, 736 N.E.2d at 1276, and *B.L.*, 688 N.E.2d at 1312 n.1). Our supreme court has rejected this court's reliance on the "likely to evade review" element in deciding whether to resolve a moot case on the merits under the great public interest exception. *In re Lawrance*, 579 N.E.2d at 37 n.2. Moreover, the issues raised in *W.R.S.* and *B.L.* involved alleged statutory violations, or issues that were likely to recur if not resolved by an appellate court. In contrast, here, C.J. alleges that the juvenile court abused its discretion when it placed him with DOC. There is already Indiana case law providing guidance on this issue, and we need not apply the great public interest exception to the mootness doctrine here. *See, e.g.*, *D.P. v. State*, 783 N.E.2d 767 (Ind. Ct. App. 2003); *E.H. v. State*, 764 N.E.2d 681 (Ind. Ct. App. 2002), *trans. denied*.

show cause why this appeal should not be dismissed as moot, C.J. made no contention that this appeal concerns a question of great public interest. Rather, C.J. asserted that we should exercise our discretion to hear the appeal only because "'leaving the judgment undisturbed *might lead* to negative collateral consequences.'" Appellant's Response to Show Cause Order at 2 (quoting *Roark v. Roark*, 551 N.E.2d 865, 867 (Ind. Ct. App. 1990)) (emphasis added). In other words, C.J. argues that his appeal is not moot.

[10] In support of that contention, C.J. maintains that "[a]warding wardship of a juvenile to the DOC has several collateral consequences." *Id.* In particular, C.J. asserts that the DOC placement: would give "an inaccurate impression to a potential future juvenile judge" and "invites the State to argue at any future dispositional hearings that only DOC placement would be appropriate"; could be used as an aggravating factor in a future delinquency case; could be considered as a factor in determining whether C.J. is "beyond rehabilitation under the juvenile justice system" in order to waive him into adult court in the event of a future delinquency proceeding; and could be considered as an aggravating factor if C.J. finds himself charged with a crime as an adult in the future. *Id.* at 3-4.

[11] In *J.B. v. Indiana Department of Child Services* (*In re S.D.*), 2 N.E.3d 1283 (Ind. 2014), our supreme court addressed the merits of a mother's appeal of a CHINS determination despite the fact that the child had since been returned to the mother's custody and the CHINS case closed. The court held that the appeal was not moot because of the negative collateral consequences to mother as a

result of a prior CHINS determination, namely, the statutory grounds for "relax[ing]" the State's burden for terminating parental rights; "adverse job consequences[,] . . . such as precluding Mother from employment with any DCS contractor"; and disqualification from becoming a foster parent. *Id.* at 1290. The court supported each of the listed consequences with citations to Indiana Code Section 31-35-2-4 and DCS websites.

[12] In contrast to the concrete and supported examples of collateral consequences listed in *J.B.*, C.J.'s alleged collateral consequences are either not supported by the law or are speculative. First, C.J. cannot show that his commitment to DOC makes a future commitment more likely because this court has explicitly rejected a juvenile court's reliance on a "presumption of recommitment" under such a circumstance. *See E.L. v. State*, 783 N.E.2d 360, 365 (Ind. Ct. App. 2003) (rejecting "as counter to the court's duty" the alleged "unwritten policy adhered to in the Marion County Juvenile Court, in which juvenile offenders who have previously been committed to the Department of Correction are recommitted upon a subsequent offense"). Second, C.J. can only speculate that a prior DOC placement "could be used" as an aggravating factor in a future juvenile adjudication. Appellant's Response to Show Cause Order at 3. C.J. does not explain how, in the event of a future juvenile adjudication, the fact of a prior DOC placement would be a substantial aggravating factor when compared to other existing aggravators, such as probation violations and prior true findings.

[13] Third, with respect to possible waiver into adult court, if such a circumstance were to someday come to pass, it would be the result of C.J. having at some

future time committed what would be a felony if committed by an adult. C.J.'s assertions regarding the potential impact of a prior DOC commitment in the sentencing of such a case is thus speculation. Finally, in the event of a future conviction as an adult, C.J. does not explain how a prior juvenile commitment to DOC would necessarily or even likely be considered a significant aggravator apart from other failed placements, past violations of probation, criminal history, and the underlying juvenile adjudication or criminal conviction on which he would be sentenced. In sum, we are not persuaded that the collateral consequences alleged by C.J. justify our review of the merits of his appeal.

[14] C.J. has been released from the DOC, and, were we to review the merits of this appeal, we would be unable to grant C.J. the relief he requests if we agreed with his arguments. As such, his appeal is moot, and C.J. does not allege that this appeal presents a question of great public interest to justify consideration of the merits of his appeal. We reject C.J.'s contentions that his appeal is not moot in light of possible negative collateral consequences. We dismiss his appeal as moot.

[15] Dismissed.

Bailey, J., and May, J., concur.