## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 28 2019, 6:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stuart K. Baggerly
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

James L. Whitlatch
Kathryn E. DeWeese
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Commitment of N.B., <br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana University Health Bloomington Hospital, <br> *Appellee-Petitioner,* | October 28, 2019 <br><br> Court of Appeals Case No. 19A-MH-1162 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable Stephen R. Galvin, Judge <br><br> Trial Court Cause No. 53C07-1905-MH-160 |

**Tavitas, Judge.**

## Case Summary

N.B. appeals the trial court's grant of Indiana University Health Bloomington Hospital's ("IU Hospital") petition for involuntary commitment and the trial court's forced medication order. We dismiss.

## Issue

N.B. raises two issues; however, we address one issue we find to be dispositive, which is whether N.B.'s commitment order is moot.

## Facts

On May 8, 2019,[1] IU Hospital filed an application for emergency detention of N.B., a mentally ill person, and a petition for involuntary commitment. The petition stated that N.B. suffered from schizophrenia. The physician's emergency statement, filed by Dr. Jessica Mayer, stated that N.B. "has a history of assaulting mother when not under treatment, has been followed by psychiatry since 12/4/2018 [and] has been deteriorating." Appellant's App. Vol. II p. 8. Dr. Mayer based her statement on personal observations, her examination of N.B., an ongoing professional relationship with N.B., and information provided by N.B.'s parents. The petition and supporting documents also stated that N.B. physically assaulted his mother and attempted

---

[1] The application also has a file stamp of May 1, 2019; however, because the chronological case summary ("CCS") uses May 8, 2019, as the date the filing was opened, we will use that date.

to physically assault his father and that N.B. has "zero insight into his illness or the need for medications." *Id.* at 15.

[4] The same day, on May 8, 2019, the trial court held a hearing; N.B. appeared by counsel, and N.B.'s parents joined the hearing by telephone. Dr. Gregory Sidell, a certified psychiatrist, testified at the hearing that N.B. was admitted to IU Hospital after staff received a phone call from another hospital where N.B. was transported "after [N.B.'s] outpatient psychiatrist had become alarmed at [N.B.'s] behaviors." Tr. Vol. II p. 7. Accordingly, the psychiatrist filed paperwork for a seventy-two-hour hold. Dr. Sidell also testified that his impression is that N.B. suffers from schizophrenia and "has shown extremely tangential thought process, very hard to follow, has clearly been responding to internal stimuli, [and] has been talking to the air in his room when he doesn't think he is being observed." *Id.* Dr. Sidell acknowledged that N.B. "does have a pretty high intelligence and [ ] is able to assimilate symptoms and hide the symptoms but he has no insight into his psychotic illness and need for medications." *Id.* at 7-8.

[5] With regard to N.B.'s medication, Dr. Sidell testified that N.B. took one dose of an anti-psychotic medication called Invega and "actually seemed somewhat improved the next day, but since then [N.B.] has made it clear that he is not willing to take any type of anti-psychotic medications." *Id.* at 8. Accordingly, Dr. Sidell requested a forced medication order for both Invega Sustenna and Abilify Maintena. Dr. Sidell also acknowledged that N.B. requested "a long list of all of the various different anti-psychotic medications that are available from

the pharmacy and at one point, [N.B.] did say that he would be willing to take Haldol but [Dr. Sidell] talked to him about the side effects of Haldol and [N.B.] decided against that one." *Id.* at 9. Dr. Sidell testified that the benefits of the medications outweigh the risks presented by the side effects of the medications.

Dr. Sidell also testified that N.B. has previously been on court-ordered mental health diversion and previously was on a seventy-two hour hold in California after an admitting diagnosis of bi-polar disorder. Dr. Sidell determined commitment was necessary on the basis that N.B. was a danger to himself and others. Dr. Sidell testified:

> Previously [N.B.] attacked his mother physically, spent 40 days in (inaudible) County Jail in California. That was in 2017. In 2018, he was a student at [a school in California] and currently is on a leave of absence from [the school] and the paperwork from the [school], from 2018, indicates that at that point in time he had acute thoughts of self-harm, thought about using a tie to hang himself. His father has reported to me that in recent weeks, [N.B.] has been very isolative at home, in his room, making guttural animal noises behind the door. His father went in to see, [to] make sure that [N.B.] was okay several weeks ago, and [N.B.] attempted to hit his father in the head with a dumbbell. And then more recently, the father reported that [N.B.] assumed an aggressive posture towards his father and the father was afraid that [N.B.] might attack him physically.

*Id.* at 11-12.

N.B.'s father testified by telephone and said that he has "seen [N.B.] steadily become more confused and isolated and sometimes aggressive." *Id.* at 16.

Moreover, N.B.'s father testified that N.B. swung a barbell at him and "has been physically forward aggressive as if going to hit [him]." *Id.* The incident occurred "a few weeks ago," but N.B.'s father was not exactly sure how long ago. *Id.* N.B.'s father also recounted that N.B. "makes angry argumentative noises by himself in his room and also noises that are not identifiable particularly as human speech, a screeching noise[]." *Id.* at 17. According to N.B.'s father, N.B.'s medical leave from school in California was due to N.B. "missing classes, failing in his schoolwork, isolating in his dormitory room, and when [N.B.] would show up to class they suggested that he was going in his pajamas. . . . Unable to manage his life." *Id.* N.B.'s father opined that the "best thing" for N.B. would be for N.B. to take medication and be committed for treatment at a health facility. *Id.* at 18.

[8] Additionally, N.B.'s mother testified by telephone that N.B. has hit her; that she occasionally has to speak to N.B. "very forcefully" to "bring him back to [ ] reality"; and that N.B. talks to himself and makes animal noises. *Id.* at 20. N.B. also testified and stated that he was under a lot of stress, particularly while he was in law school in California, because it was a "religious school." *Id.* at 23. N.B. also acknowledged an incident occurred with his mother, but now N.B. is complying with requirements the court set forth as a result of this incident.

[9] At the conclusion of the hearing, the trial court took the matter under advisement. On May 8, 2019, the trial court entered an order of commitment and found that N.B. suffered from "schizophrenia, a mental illness as defined in

IC 12-7-2-130(1)," and that N.B. is dangerous to others "as defined in IC 12-7-2-53." Appellant's App. Vol. II p. 4. The trial court's order of commitment required N.B. to be committed for "a temporary period not to exceed ninety (90) days." *Id.* The trial court's order also granted IU Hospital with "an order to treat with the following medication, unless [N.B.] does not specifically benefit from these medications: Invega Sustenna or Abilify Maintena." *Id.* at 5.

## Analysis

[10] N.B. asserts that the evidence was insufficient to support his commitment.

> In reviewing the sufficiency of the evidence supporting a determination made under the statutory requirement of clear and convincing evidence, an appellate court will affirm if, considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find the necessary elements proven by clear and convincing evidence.

*Civil Commitment of T.K. v. Dep't of Veterans Affairs,* 27 N.E.3d 271, 273 (Ind. 2015) (quotations and citations omitted).

[11] Here, we are faced with the issue of mootness, as N.B.'s "temporary period [of commitment] not to exceed ninety (90) days," issued on May 8, 2019, has lapsed. *Id.* at 4. *See also* Ind. Code § 12-26-6-1 ("An individual who is alleged to be mentally ill and either dangerous or gravely disabled may be committed to a facility for not more than ninety (90) days under this chapter."). Our Supreme Court has held in *T.W. v. St. Vincent Hospital and Health Care Center, Inc.,* 121 N.E.3d 1039, 1042 (Ind. 2019):

> The long-standing rule in Indiana courts has been that a case is deemed moot when no effective relief can be rendered to the parties before the court. When the controversy at issue has been ended or settled, or somehow disposed of so as to render it unnecessary to decide the question involved, the case will be dismissed. But Indiana recognizes a public interest exception to the mootness doctrine, which may be invoked when the issue involves a question of great public importance which is likely to recur.

(internal quotations and citations omitted).

[12] *T.W.* involved another issue of great public importance, namely, whether a court lacked authority to enter orders of civil commitment. Still, in *T.W.,* our Supreme Court held, "[u]nder these circumstances, though, where the orders concern periods that have expired, remanding those orders to the trial court for its review serves no apparent purpose." *T.W.,* 121 N.E.3d at 1042. Here, the trial court's order for the temporary involuntary commitment, as well as the forced medication order, terminated after the ninety-day commitment period. Accordingly, we are unable to provide relief to N.B.[2] Pursuant to *T.W.*, when commitment orders have expired, the issue on appeal regarding the commitment is moot.

---

[2] This Court has "routinely consider[ed] the merits of appeals brought by persons alleging insufficient evidence to support involuntary commitments." *C.J. v. State,* 74 N.E.3d 572, 575 (Ind. Ct. App. 2017). With our Supreme Court's recent opinion in *T.W.*, however, we are careful to consider the merits of moot involuntary commitments only when there is an issue of great public importance. We do not find an issue of great public importance based on the facts before us here.

## Conclusion

[13] N.B.'s involuntary commitment orders are moot; therefore, we dismiss the appeal as moot.

[14] Dismissed.

Brown, J., and Altice, J., concur.