## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 09 2020, 9:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Alan Love,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 9, 2020

Court of Appeals Case No.
19A-CR-1844

Appeal from the Tippecanoe
Circuit Court

The Honorable Sean M. Persin,
Judge

Trial Court Cause No.
79C01-1804-F1-3

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Defendant, David Love (Love), appeals his convictions and sentence for two Counts of child molesting by sexual intercourse, Level 1 felonies, Ind. Code § 35-42-4-3(a)(1); and one Count of child molesting by other sexual conduct, a Level 1 felony, I.C. § 35-42-4-3(a)(1).

[2] We affirm.

# ISSUES

[3] Love presents three issues on appeal which we restate as:

> (1) Whether the prosecutor committed misconduct amounting to fundamental error when she argued to the jury that Love could be convicted based solely on the victims' testimony;
>
> (2) Whether the trial court erred in tendering certain final instructions; and
>
> (3) Whether Love's sentence is inappropriate in light of the nature of his offenses and his character.

# FACTS AND PROCEDURAL HISTORY

[4] Amanda Love (Amanda) is the mother of two daughters, M.B. and D.B., and a son, N.B. (collectively, the Children). Amanda divorced the Children's father in 2009. Amanda met Love online in 2012. In March 2013, Amanda moved into Love's mobile home in West Lafayette, Indiana. The Children moved in with Amanda and Love in May 2013, when M.B. was seven years old, N.B.

was six years old, and D.B. was four years old. The Children came to call Love their dad. Love would care for the Children when Amanda was not at home. Amanda has been diagnosed with a learning disability. All three of the Children are learning delayed and perform below grade level. The Children often do not understand what is being told to them and require multiple explanations before comprehending.

[5] Starting approximately one year after the Children had moved into Love's home, Love began molesting M.B. Love inserted his penis into M.B.'s vagina, anus, and mouth. Love subjected M.B. to sexual intercourse multiple times, and he had anal intercourse with her on more than one occasion. Love also inserted his fingers inside M.B.'s vagina, and he directed M.B. to masturbate him. At bedtime, Love would often come into the bedroom that M.B. shared with D.B., climb into M.B.'s top bunk, and touch M.B.'s chest and genitals. These offenses were an everyday occurrence for M.B., and they often happened when Amanda was at work. M.B. did not tell anyone about the offenses because she was afraid that she would be in trouble and that Amanda would be angry at her. Love would take M.B. for meals alone, tell M.B. that she was beautiful, and called her "my love." (Transcript Vol. IV, p. 24). Love last performed sexual intercourse on M.B. when she was twelve years old.

[6] Starting when N.B. was eight years old, Love subjected N.B. to anal intercourse. Although N.B. was unsure how many times it had happened, he was sure that it had happened more than once. This would often occur at night when N.B. was trying to sleep, and it hurt "really bad." (Tr. Vol. II, p. 246).

Love had N.B. fellate him, and Love fellated N.B. Love also had N.B. masturbate him to ejaculation. N.B. did not report the offenses because he was afraid of Love, and Love had told him not to tell. N.B. was eleven years old the last time Love molested him.

[7] Starting when D.B. was around the age of eight, Love began subjecting D.B. to vaginal and anal intercourse. This would occur in Love's bedroom and in D.B.'s bedroom when Amanda was not at home. Love also fondled D.B.'s chest and buttocks. Love also showed the Children pornography that he accessed on his cell phone.

[8] In March of 2018 when the Children were on spring break, Amanda asked M.B. if anyone had ever touched her inappropriately. M.B. became hysterical and reported what Love had done. When asked the same question, D.B. also disclosed being molested. N.B. initially denied that anything had happened to him because he continued to be afraid of Love, but he later reported that Love had molested him. Amanda alerted law enforcement after M.B. and D.B. first reported. Amanda and the Children did not return to Love's home. When interviewed by law enforcement, Love said that he would cuddle with M.B. in her bed and talk to her about sexual matters, among other things. Love also related that once in 2016 when he was sleeping with M.B. in her bed, he awoke and found M.B. holding his erect penis. According to Love, after this incident, he stopped spending time with M.B. in her bed, but later started again at her insistence.

[9] On April 4, 2018, the State filed an Information, charging Love with offenses against M.B. and D.B.—two Counts of Level 1 felony child molesting, two Counts of Level 4 felony child molesting, and two Counts of Level 6 felony performing sexual conduct in the presence of a minor. After N.B. reported and plea negotiations lapsed, on September 6, 2018, the State filed an amended Information, charging Love with three additional Counts of Level 1 felony child molesting of M.B., one Count of Class A felony child molesting of M.B., three additional Counts of Level 1 felony child molesting of D.B., three Counts of Level 1 felony child molesting of N.B., and one Count of Level 4 felony child molesting of N.B. Prior to trial, the trial court granted the State's motion to dismiss two of the Level 1 felony charges of molesting M.B.

[10] On May 14, 2019, the trial court convened Love's three-day jury trial. The Children testified regarding the offenses. M.B. testified that she had witnessed Love touch D.B.'s genitals. D.B. testified that she had witnessed Love subject M.B. to sexual intercourse. N.B. related that on one occasion, Love called N.B. into M.B.'s bedroom to watch Love subject M.B. to anal intercourse. N.B. had also witnessed M.B. resist, attempt to push Love away, and scream in pain on another occasion that Love subjected M.B. to sexual intercourse.

[11] Love's biological son, C.L., who would visit at Love's home, related that he had observed Love kissing M.B. and D.B. using his tongue, which made C.L. uncomfortable. C.L. had also seen M.B. rubbing her foot against Love's testicles, which Love did not always stop her from doing. C.L. observed Love playing a game with M.B. and D.B. which involved grabbing the girls' chest, a

game that he did not play with C.L. or N.B. Text messages between M.B. and Love were admitted into evidence in which the two argued about who loved whom more, Love told M.B. "I Will Always Love You," and, after M.B. sent him a selfie, Love responded, "There's my pretty girl," and "Wow . . . Tell me how you really feel about me[.]" (Exh. 60, Exh. Vol. I, pp. 168-69).

[12] The State proffered the two following final instructions:

> Proof of "penetration" is sufficient where the slightest penetration occurred to the external genitalia of the female sexual organ, vagina, or anus.

> When other sexual conduct is charged alleging the penetration of the sex organ or anus of a person by an object, the law holds that a finger is an "object."

(Appellant's App. Vol. II, pp. 120, 121). Love's counsel reviewed the proposed instructions, and, when asked by the trial court if Love had any objection to the State's proposed instruction, Love's counsel responded, "No." (Tr. Vol. IV, p. 85).

[13] During her closing argument, the prosecutor remarked twice to the jury that, according to Indiana law, it could convict Love based solely on the testimony of the victims. The prosecutor also once argued that the jury could convict based on the testimony of the victims alone, without referring to the state of the law in Indiana. Love's counsel did not object to this argument or move for a mistrial. Love's counsel argued in his own closing remarks that, when it had no physical evidence corroborating the crimes, the State always emphasized that a

defendant could be convicted solely on a victim's testimony. Among the trial court's final instructions to the jury were the "proof of penetration" and "finger as object" instructions.

[14] The jury found Love not guilty of the Class A felony child molesting charge as to M.B. and not guilty of one of the Level 1 felony child molesting charges as to D.B. The jury found Love guilty of the remaining nine Level 1 felonies, two Level 4 felonies, and two Level 6 felonies.

[15] The presentence investigation report filed with the trial court revealed that Love had one prior conviction in 2008 for Class A misdemeanor domestic battery. A risk assessment done by the probation department placed Love in the low risk category to reoffend. Love had graduated from high school and attended some college. Love had been employed for seventeen years at the same business, and his employer provided a character reference. Love reported previously raising six other children without incident, and he reported having no issues with substance or alcohol abuse.

[16] In her letter to the trial court submitted for sentencing, Amanda related that, as a result of Love's offenses, the Children experienced difficulty sleeping, had nightmares, and exhibited anger and behavioral issues. Amanda no longer trusted anyone with the Children. The whole family was in counseling. M.B., N.B., and D.B. wrote the trial court that they hoped that Love would never be free again. M.B. and N.B. felt that Love had ruined their lives, and D.B.

wanted Love to "stay in jail forever so he doesn't do it to anyone else." (Appellant's Conf. App. Vol. III, p. 62).

[17] On July 19, 2019, the trial court conducted Love's sentencing hearing. Citing double jeopardy concerns, the trial court declined to enter judgment of conviction on all the jury's verdicts apart from one Level 1 felony conviction for Love having sexual intercourse with M.B., one Level 1 felony conviction for Love having sexual intercourse with D.B., and one Level 1 felony conviction for Love engaging in other sexual conduct with N.B. involving Love's penis and N.B.'s anus. The trial court found as a significant aggravating circumstance that Love had care, custody, and control of the Children during the offenses. The trial court also found that the harm to the Children was greater than that necessary to accomplish the offenses. The trial court found no mitigating circumstances. It specifically rejected Love's proffered mitigator of lack of a criminal history, finding that Love had a criminal conviction and that he had not led a law-abiding life due to molesting the Children over an extended period of time. The trial court sentenced Love to thirty-three years for each of his three convictions, to be served consecutively.

[18] Love now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Prosecutor's Closing Argument*

[19] Love's first contention is that "the prosecutor committed fundamental error by advising the jury in final argument, on at least three occasions, that the

uncorroborated testimony of a victim alone is sufficient to convict." (Appellant's Br. p. 19). As a general matter, "'[i]n reviewing a properly preserved claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected.'" *Jones v. State*, 101 N.E.3d 249, 257 (Ind. Ct. App. 2018) (quoting *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)), *trans. denied*. Whether a prosecutor's closing argument amounts to misconduct is determined by reference to case law and the Rules of Professional Conduct. *Id*. The gravity of peril resulting from the challenged argument is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of the impropriety of the conduct involved. *Id*.

[20] To properly preserve a claim of prosecutorial misconduct, a defendant must, at the time of the alleged misconduct, request an admonishment or move for a mistrial. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). Love did neither, so his claim is procedurally defaulted. *Id*. Our standard of review for waived claims dictates that "the defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error." *Id*. at 667-68. Fundamental error is an extremely narrow exception to waiver, and a defendant faces the heavy burden of demonstrating that the alleged error is so prejudicial to his rights that it rendered a fair trial impossible. *Id*. at 668.

[21]     Love argues that the prosecutor improperly argued that the jury could convict him based solely on the testimony of his victims.  In support of his claim, Love relies on our supreme court's decision in *Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003), in which the court held that it was error for a trial court to instruct the jury that a conviction could be based solely on the uncorroborated testimony of the victim.  Love contends that *Ludy* is applicable to his case because the prosecutor's argument had the same impact on the jury as would a jury instruction.

[22]     However, the trial court gave no such instruction in this case, and our supreme court has never held that a prosecutor, whose job it is to focus the jury's attention on the facts and evidence it considers favorable to the State's case, may not argue its interpretation of the law surrounding victim testimony.  The prosecutor's statement of the law was correct.  *See Garner v. State*, 777 N.E.2d 721, 725 (Ind. 2002); *Carter v. State*, 31 N.E.3d 17, 30 (Ind. Ct. App. 2015), *trans. denied*.  In addition, this court has already rejected the very claims that Love makes here.  *See Deaton v. State*, 999 N.E. 452, 456 (Ind. Ct. App. 2013) (holding that prosecutor's closing argument that "according to the Indiana Supreme Court and the Indiana Court of Appeals" the child molesting victim's uncorroborated testimony was sufficient to convict did not constitute misconduct), *trans. denied*; *see also Weis v. State*, 825 N.E.2d 896, 904 (Ind. Ct. App. 2005) (rejecting Weis' argument that a prosecutor's argument about a child molesting victim's testimony had the same impact as a jury instruction and noting that the "mere fact that a jury may not be instructed on a certain

point of law does not lead to the conclusion that argument concerning that point of law is also improper."). Love does not address this legal authority that is contrary to his claim. Accordingly, we conclude that Love has failed to establish that the prosecutor committed any misconduct, let alone misconduct amounting to fundamental error. *See Ryan*, 9 N.E.3d at 667-68.

## II. *Jury Instructions*

[23] Next, Love argues that the trial court "committed fundamental error by reading two erroneous final instructions"—*i.e.*, one on what constituted sufficient proof of penetration and one providing that a finger is an object for purposes of determining whether other sexual conduct occurred. (Appellant's Br. p. 23). Jury instruction is a matter within the discretion of the trial court, and we will reverse a trial court's instructional decision only upon an abuse of that discretion. *Cardosi v. State*, 128 N.E.3d 1277, 1284 (Ind. 2019). The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable the jury to comprehend the case clearly so that it may arrive at a just, fair, and correct verdict. *Isom v. State*, 31 N.E.3d 469, 484 (Ind. 2015). In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence supporting the instruction; and (3) whether the substance of the instruction was covered by other instructions given by the trial court. *Thomas v. State*, 61 N.E.3d 1198, 1201 (Ind. Ct. App. 2016), *trans. denied*.

## A. *Availability of Love's Instructional Claims*

[24]    Before proceeding to the merits of Love's claim of instructional error, we pause to address the extent to which his claims are available for our review. Love argues that the trial court erred in giving an instruction that a finger is an object for purposes of an allegation of other sexual conduct involving penetration of the sex organ of a person by an object. However, the trial court did not enter judgment of conviction on any Count of other sexual conduct involving that type of penetration. The trial court entered judgment of conviction on two Counts of Level 1 felony child molesting by sexual intercourse as to M.B. and D.B. The third conviction upon which the trial court entered judgment was for Level 1 felony child molesting by other sexual conduct involving Love's penis and N.B.'s anus.

[25]    "Mootness arises when the primary issue within the case has been ended or settled or in some manner disposed of, so as to render it unnecessary to decide the question involved." *C.J. v. State*, 74 N.E.3d 572, 575 (Ind. Ct. App. 2017) (quotation omitted), *trans. denied*. Put another way, when a court is not able to render effective relief to a party, the case is deemed moot and subject to dismissal. *Id*. Here, the trial court did not enter judgment of conviction on any Count that would implicate this specific claim by Love, and, therefore, there is nothing upon which we may render relief. We conclude that Love's claim based on the "finger as object" instruction is moot, and we decline to address it.

[26]    In addition, the State argues that both of Love's instructional claims are unavailable for our review because he invited the error he now challenges. In

*Batchelor v. State*, 119 N.E.3d 550, 556 (Ind. 2019), our supreme court recently clarified the difference between the doctrine of invited error, which typically forecloses our review of a claim, and waiver, which leaves a claim open to review for fundamental error. In *Batchelor*, the trial court summarized the final instructions and then asked the parties, "We good?" to which defense counsel replied, "Yeah." *Id*. at 554. Batchelor raised an appellate claim of instructional error, and the State argued that his claim was foreclosed because he had invited any error. *Id*. at 556. The court held that to establish that a defendant invited error, there must be some evidence that the appellant's affirmative actions, as part of a deliberate trial strategy, produced the claimed error. *Id*. at 558. "A passive lack of objection, standing alone, is simply not enough." *Id*. (quotation omitted). The court observed that Batchelor's counsel had not made a request for the challenged instruction and held that defense counsel's mere act of replying "Yeah" to the trial court's query "We good?" was insufficient to show any deliberate trial strategy on his part. *Id*. at 558-59. Declining to find invited error, the court reviewed Batchelor's claim for fundamental error. *Id*. at 559.

[27] Here, it was the State that proposed and relied upon the challenged instructions, not Love. In addition, Love's counsel merely stated that he had no objection to the State's proposed instructions, which we find is the same type of passive lack of objection that our supreme court held was insufficient to show invited error in *Batchelor*. Accordingly, we conclude that Love did not invite the error he now challenges and that his remaining instructional error claim is subject to review for fundamental error, meaning error that "clearly and blatantly violated

basic principles of due process resulting in undeniable and substantial potential for harm" and that made a fair trial impossible. *Id*. at 559 (quotation omitted).

### B. *Instruction on Proof of Penetration*

[28] The trial court instructed the jury that

> Proof of "penetration" is sufficient where the slightest penetration occurred to the external genitalia of the female sexual organ, vagina, or anus.

(Appellant's App. Vol. II, p. 172). This is a correct statement of the law, and Love does not argue otherwise. *See Boggs v. State*, 104 N.E.3d 1287, 1289 (Ind. 2018); *Short v. State*, 564 N.E.2d 553, 559 (Ind. Ct. App. 1991). The giving of the instruction was supported by M.B.'s testimony that she called her genitals her "private area," Love would put Vaseline on his "dick" when he shoved it inside her private area, and that it hurt "[w]henever he shoved it inside of [her]" (Tr. Vol. II, pp. 109, 129-30); by D.B.'s testimony that she called her genitals her "crotch" and that Love put his "dick" inside her crotch (Tr. Vol. II, pp. 184, 186-87, 205); and by N.B.'s testimony that he called a penis a "wiener," Love would "shove [his wiener] inside of me," Love shoved his penis inside N.B.'s "butt," and that a butt's function is you "poop out of it." (Tr. Vol. II, pp. 226, 237). Love does not contend on appeal that the challenged instruction was covered by another instruction. Thus, we find no error in the trial court's provision of this instruction to the jury. *See Thomas*, 61 N.E.3d at 1201.

[29] Nevertheless, Love argues that the trial court's instruction improperly emphasized "one particular evidentiary fact, witness or phase of the case" without explaining what precisely was being unduly emphasized. (Appellant's Br. p. 24). "Penetration" is part of the definition of sexual intercourse and other sexual conduct. *See* I.C. §§ 35-31.5-2-302; -221.5. The challenged instruction did not emphasize any particular fact, witness, or trial phase; rather, it informed the jury what type of evidence it could consider in determining whether penetration had occurred.

[30] Love also argues that the instruction was improper because it is derived from appellate case law regarding the sufficiency of the evidence to sustain a conviction. Citing *Drollinger v. State*, 408 N.E.2d 1228, 1241 (Ind. 1980), Love contends that "[t]he mere fact that certain language or expressions may be used in a Court of Appeals decision to analyze sufficiency of the evidence issues, does not make the language proper as an instruction to the jury." (Appellant's Br. p. 25). However, it is also true that "[t]here is no blanket prohibition against the use of appellate decision language in jury instructions." *Munford v. State*, 923 N.E.2d 11, 15 (Ind. Ct. App. 2010). There is no statutory definition of penetration. In addition, although the preferred practice is to use pattern jury instructions, *see Lacy v. State*, 58 N.E.3d 944, 947 (Ind. Ct. App. 2016), there is no pattern instruction on penetration. The instruction given by the trial court assisted the jury in comprehending the offenses clearly, whether it came from appellate decisions or not. *See Isom*, 31 N.E.3d at 484.

[31] Love's last challenge to this instruction is that it was confusing to the jury and was unsupported by evidence because there was no expert testimony explaining the anatomy of the female sex organ or the anus. Love presents us with no legal authority requiring an expert to testify regarding the female anatomy or the anus in order to support such an instruction. Indeed, we find little likelihood a juror would be confused regarding the anatomy of the anus because every human being has personal experience with that part of the body. In addition, N.B. testified that the part of his anatomy where Love inserted his penis was where you "poop out of[.]" (Tr. Vol. II, p. 237).

[32] Regarding the female sex organ, at trial, M.B. and D.B. pointed to drawings of a girl to identify their own genitals, provided their terms for that area, and specifically stated that Love had placed his penis inside that area. In addition, the nurse who conducted the girls' sexual assault exams differentiated between the external exam of their genitalia, which were "the parts that you would see without touching them at all," the internal exam of the areas where she would "tell the kiddos I am going to use my hands now and I'm just going to open you up a little bit," and the "vaginal cavity." (Tr. Vol. III, pp. 133-34). A diagram of the female sex organ was also admitted during the nurses' testimony. (Exh. 57, Conf. Exh. Vol. I, p. 147). This was additional evidence that supported the giving of the instruction and aided the jury's understanding. In short, we find no error in the giving of this instruction, let alone the fundamental error that Love was required to demonstrate to overcome the effect of his waiver of the issue.

## III. *Appropriateness of Sentence*

[33] Love also contends that his sentence is inappropriate given the nature of his offenses and his character. "Even when a trial court imposes a sentence within its discretion, the Indiana Constitution authorizes independent appellate review and revision of this sentencing decision." *Hoak v. State*, 113 N.E.3d 1209, 1209 (Ind. 2019). Thus, we may revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Id*. The principal role of such review is to attempt to leaven the outliers. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The defendant bears the burden to persuade the reviewing court that the sentence imposed is inappropriate. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018).

### A. *Nature of the Offenses*

[34] When assessing the nature of an offense, the advisory sentence is the starting point that the legislature selected as an appropriate sentence for the particular crime committed. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). The trial court entered judgment of conviction on three Level 1 felonies for child molesting. The sentencing range for a Level 1 felony is between twenty and forty years, with the advisory sentence being thirty years. I.C. § 35-50-2-4(b). The trial court sentenced Love to a slightly enhanced, thirty-three-year sentence for each of the Level 1 felonies, to be served consecutively.

[35] Love argues that his slightly-enhanced, consecutive sentences are inappropriate given the nature of his offenses. When reviewing the nature of an offense, we

look to the "the details and circumstances of the commission of the offense and the defendant's participation." *Perry*, 78 N.E.3d at 13. Love was the person who the Children called their dad, and he committed the offenses when Mother was not at home and the Children were in his exclusive care. Love betrayed his position of trust with the Children in a grievous manner. We have long held that "[a]busing a position of trust is, by itself, a valid aggravator which supports the maximum enhancement for a sentence for child molesting." *See Hart v. State*, 829 N.E.2d 541, 544 (Ind. Ct. App. 2005). We find that this factor alone, which Love does not argue on appeal was invalid, renders Love's individual sentences, which were three years above the advisory sentence, appropriate. *See Baumholser v. State*, 62 N.E.3d 411, 418 (Ind. Ct. App. 2016) (finding defendant's thirty-two year concurrent sentences for one Level 1 felony and two Class C felony child molesting convictions to be appropriate where he abused his position of trust with his stepdaughter to molest her on multiple occasions), *trans. denied*.

[36] Other evidence in the record bolsters our conclusion that the nature of Love's offenses merits the individual sentences imposed. All the Children are developmentally delayed, which made them more vulnerable than other children. Love began abusing the Children when each was eight years old, which was considerably younger than the age of fourteen years old necessary to prove the offense. *See* I.C. § 35-42-4-3(a)(1). Love emotionally manipulated M.B. by fostering the perception that they had a romantic relationship. Love molested the Children in front of each other, in one instance calling N.B. into

the room so that N.B. could watch Love anally penetrating M.B. As a result of the offenses, the Children have experienced difficulty sleeping, nightmares, anger, and behavioral issues. The entire family is in counseling. In sum, we find nothing inappropriate about the individual sentences imposed given the nature of the offenses.

[37] We also conclude that consecutive sentences are not inappropriate given that there were three victims involved. Consecutive sentences "vindicate the fact that there were separate harms and separate acts against more than one person." *Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003); *see also Upton v. State*, 904 N.E.2d 700, 704 (Ind. Ct. App. 2009) (finding consecutive sentences for child molesting offenses appropriate where Upton molested multiple victims), *trans. denied*. Love draws our attention several times to the fact the sentence imposed is effectively a "life sentence" for him. (Appellant's Br. pp. 2, 5, 28, 30). However, a sentence is not inappropriate merely because it may result in the defendant never being free in society again. *See*, *e.g.*, *Wright v. State*, 108 N.E.3d 307, 320-21 (Ind. 2018) (finding Wright's sixty-year sentence for molesting two victims appropriate, even though it "essentially amount[ed] to a life-sentence for this thirty-three-year-old credit restricted felon.").

[38] Love was forty-three years old when he began molesting M.B., and he was forty-nine years old when the trial court imposed its sentence. We note that even if the trial court had imposed the minimum sentence of twenty years for each of the offenses and ordered them to be served consecutively in recognition of the three victims, it would have still resulted in life-long incarceration for

Love.  We are unwilling to discount the suffering of one or more of Love's victims simply because Love did not locate his targets earlier.

## B. *Character of the Offender*

[39]     In addition, upon reviewing a sentence for inappropriateness, we look to a defendant's life and conduct as illustrative of her character.  *Morris v. State*, 114 N.E.3d 531, 539 (Ind. Ct. App. 2018), *trans. denied*.  Love directs our attention to his relative lack of criminal history, his employment record, previous efforts at education, lack of alcohol and substance abuse, his contribution to raising other children, and the fact that the probation department assessed him as being in the low category to re-offend.  However, we conclude that Love has failed to meet his burden of persuasion on appeal because these factors do not override other evidence of Love's poor character present in the record.  Love molested the Children over a period of approximately four years, which indicates to us that Love did not live a law-abiding life despite the fact that he only had one previous conviction for domestic battery.  Love essentially used the Children as his sexual playthings over a period of years, molesting them at will after each turned eight.  In addition, many citizens work, complete some college, and refrain from the abuse of drugs and alcohol, so we do not find that these factors overwhelmingly militate for a reduced sentence.  Love's risk assessment was largely based on criminal history, education, and work history, which are factors which we have determined do not merit a reduced sentence.  Accordingly, we decline to revise Love's sentence due to his character.

# CONCLUSION

Based on the foregoing, we conclude that the prosecutor did not commit fundamental error in her closing argument, the trial court did not err when instructing the jury, and Love's sentence is not inappropriate given the nature of his offenses and his character.

Affirmed.

Baker, J. and Brown, J. concur